Stephen M. Orlofsky
BLANK ROME, LLP
301 Carnegie Center, 3rd Floor
Princeton, NJ 08540
(609) 750-7700

Bruce P. Keller
Jeremy Feigelson
Kristin Lieske Bryan
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, NY 10022
(212) 909-6000

*Attorneys for Defendant Viacom Inc.*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE:  NICKELODEON CONSUMER PRIVACY LITIGATION | MDL No. 2443 |
| | Docket No. 2:12-cv-07829 (SRC)(CLW) |
| This Document Relates To:  ALL CASES | ECF Case |
| | **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT VIACOM INC.'S MOTION TO DISMISS** |
| | Oral Argument Requested |

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...................................................1

ALLEGATIONS OF THE SECOND COMPLAINT ...................................3

ARGUMENT ..............................................................7

I.  Plaintiffs' New Allegations Still Do Not State A VPPA Claim. ..................9

    A.  Plaintiffs Still Do Not Allege Disclosure Of Their Personally
        Identifiable Information. ........................................9

    B.  As A Matter Of Law, There Can Be No Cause Of Action Based
        On The Absence Of An Opt-Out .....................................16

II. Plaintiffs' New Allegations Still Do Not State A Claim Under The
    New Jersey Computer Related Offenses Act. ............................17

III. Plaintiffs' New Allegations Still Do Not State A Claim For Intrusion
     Upon Seclusion. ....................................................22

    A.  Viacom's Alleged Intrusion Was Not "Highly Offensive" To A
        Reasonable Person. ..............................................22

        1.  Purported "Criminal" Acts ...................................22

        2.  Terms Of Service ............................................26

    B.  The Second Complaint Does Not Allege That Viacom
        Committed An Intentional Intrusion. ............................27

    C.  Plaintiffs Have Not Alleged And Cannot Allege Facts Showing
        A Reasonable Expectation Of Privacy In The Information At
        Issue. ..........................................................28

CONCLUSION ............................................................29

i

## TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal,*
129 S. Ct. 1937 (2009).................................................................. 21, 27

*Baraka v. McGreevey,*
481 F.3d 187 (3d Cir. 2007) ....................................................8

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ...........................................................8, 27

*Chance v. Ave. A.,*
165 F. Supp. 2d 1153 (W.D. Wash. 2001) ............................21

*Danvers Motor Co. v. Ford Motor Co.,*
432 F.3d 286 (3d Cir. 2005) ..................................................17

*Del Mastro v. Grimado,*
No. BER-C-388-03E, 2005 WL 2002355 (N.J. Super. Ct. 2005)................ 24, 25

*Doe v. Nat'l Bd. of Med. Exam'rs,*
199 F.3d 146 (3d Cir. 1999) ..................................................17

*Ellis v. Cartoon Network, Inc.,*
No. 1:14-cv-00484, 2014 WL 5023535 (N.D. Ga. Oct. 8, 2014) ......................15

*Fowler v. UPMC Shadyside,*
578 F.3d 203 (3d Cir. 2009) ....................................................8

*Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.,*
530 U.S. 1 (2000) ..................................................................13

*White v. White,*
344 N.J. Super. 211 (N.J. Super. Ct. 2001)................................. 28, 29

*In re Burlington Coat Factory Sec. Litig.,*
114 F.3d 1410 (3d Cir. 1997) ..................................................5

*In re DoubleClick Inc. Privacy Litig.,*
154 F. Supp. 2d 497 (S.D.N.Y. 2001)....................................25

*In re Google Inc. Cookie Placement Consumer Privacy Litig.*,
   988 F. Supp. 2d 434 (D. Del. 2013) ...................................................... 17, 23, 25

*In re Hannah*,
   316 B.R. 57 (Bankr. D.N.J. 2004) ...........................................................13

*In re Hulu*,
   No. C 11-03764, 2014 WL 1724344 (N.D. Cal. Apr. 28, 2014) ................. 14, 15

*In re Nickelodeon Consumer Privacy Litig.*,
   MDL No. 2443, 2014 WL 3012873 (D.N.J. July 2, 2014) ......................... *passim*

*Jevic v. Coca Cola Bottling Co. of N.Y., Inc.*,
   No. 89-4431, 1990 WL 109851 (D.N.J. 1990) .....................................28

*Kurns v. A.W. Chesterton, Inc.*,
   620 F.3d 392 (3d Cir. 2010), *aff'd*, 132 S. Ct. 1261 (2012)................................13

*LaCourt v. Specific Media, Inc.*,
   No. SACV 10-1256, 2011 WL 1661532 (C.D. Cal. Apr. 28, 2011)...................23

*Leang v. Jersey City Bd. of Educ.*,
   198 N.J. 557 (N.J. 2009).........................................................................24

*Lieberson v. Johnson & Johnson Consumer Cos.*,
   865 F. Supp. 2d 529 (D.N.J. 2011)........................................................12

*Malleus v. George*,
   641 F.3d 560 (3d Cir. 2011) .................................................................27

*Mu Sigma, Inc. v. Affine*, *Inc.*,
   No. 12-1323, 2013 WL 3772724 (D.N.J. July 17, 2013)............................ 19, 21

*O'Donnell v. United States*,
   891 F.2d 1079 (3d Cir. 1989) ...............................................................28

*P.C. Yonkers, Inc. v. Celebrations the Party and Seasonal Superstore, LLC*,
   428 F.3d 504 (3rd Cir. 2005).......................................................... 18, 19

*PNC Mortg. v. Superior Mortg. Corp.*,
   No. 09-5084, 2012 WL 627995 (E.D. Pa. Feb. 27, 2012) ........................... 18, 19

*Rush v. Portfolio Recovery Assocs. LLC*,
   977 F. Supp. 2d 414 (D.N.J. 2013)........................................................25

*Soliman v. Kushner Cos.*,
   433 N.J. Super. 153 (N.J. Super. Ct. 2013)..........................................24

*Stengart v. Loving Care Agency, Inc.*,
   201 N.J. 300 (N.J. 2010)......................................................................26

*Sterk v. Best Buy Stores, L.P.*,
   No. 11-C-1894, 2012 WL 5197901 (N.D. Ill. Oct. 17, 2012).............17

*Swift v. United Food Commercial Workers Union Local 56*,
   2008 WL 2696174 (N.J. Super. Ct. App. Div. July 11, 2008)............27

*Tamayo v. Am. Coradious Int'l, LLC*,
   No. 11-cv-6549, 2011 U.S. Dist. LEXIS 149124 (D.N.J. Dec. 28, 2011)...........24

**Statutes**

15 U.S.C. § 6502(d) .............................................................................13

18 U.S.C. § 2710(a) ....................................................................... 10, 17

18 U.S.C. § 2710(b) ....................................................................... 16, 17

18 U.S.C. § 3121 ...................................................................................23

N.J. Stat. Ann. § 2A:38A-3 ............................................................ 17, 21

**Rules**

Fed. R. Civ. P. 12(b) ..............................................................................1

Viacom Inc. ("Viacom") submits this memorandum in support of its motion to dismiss Plaintiffs' Second Consolidated Class Action Complaint ("Second Complaint") pursuant to Fed. R. Civ. P. 12(b)(1) and (6). This Court granted Viacom's motion to dismiss the predecessor pleading (the "Dismissed Complaint") in its entirety [Dkt. 65], some claims with prejudice and some without. The Second Complaint is Plaintiffs' effort to replead those claims dismissed without prejudice.

## PRELIMINARY STATEMENT

The Second Complaint should be dismissed in its entirety, this time with prejudice. It suffers from the same fundamental flaw that led the Court to dismiss Plaintiffs' initial set of claims: Nowhere is there any well-pled, non-conclusory allegation that the supposedly personally identifiable information in question – on its own and without any more steps involved – was sufficient to identify a person.

Each of the three causes of action the Court permitted Plaintiffs to replead suffers from the same defect. None of them – the Video Privacy Protection Act ("VPPA"); the New Jersey Computer Related Offenses Act ("NJCROA"); and intrusion upon seclusion – states a claim because none of Plaintiffs' additional allegations fix the flaws that have characterized their pleadings from the outset.

With respect to VPPA, Plaintiffs add the allegation that Viacom disclosed the DoubleClick cookie identifier to Google. Even accepted as true, the

DoubleClick cookie identifier is not alleged to be – or to contain – personally identifiable information.  Nor is it alleged to be different in kind from the identifiers that the Court already has held did not give rise to a VPPA claim in the context of the Dismissed Complaint.  Plaintiffs again make an entirely speculative argument – that the anonymized DoubleClick cookie identifier otherwise can be combined with personally identifiable information that Google possesses from its other services.  Not only does that fall short of an allegation that such combinations actually occur, the Second Complaint does not even allege that Plaintiffs (who are under 13) have or use accounts for the other Google services in question (which Google's terms of use limit to consumers 13 and older).  Having such accounts would be necessary for the purported combinations to occur or to amount to a VPPA disclosure.  Plaintiffs thus still do not allege the core of a VPPA violation: No one is alleged to have known their actual identities, let alone disclosed their identities along with information about the specific video materials that they viewed.

The additional NJCROA allegations also still suffer from the original defects.  The Second Complaint neither alleges that Plaintiffs were damaged in their business or property as a result of Viacom's conduct, nor that Viacom purposefully or knowingly harmed Plaintiffs.

Similarly, Plaintiffs' claim for intrusion upon seclusion remains conclusory in ways that this Court held are insufficient to state a claim.  Plaintiffs have not alleged that Viacom's alleged intrusion was "highly offensive" to a reasonable person, nor that Viacom committed an intentional intrusion into a matter in which Plaintiffs had a reasonable expectation of privacy.

This Court has given Plaintiffs ample opportunity to plead their case.  They have not done so, because they cannot do so.  The Second Complaint should be dismissed in its entirety and with prejudice.

## ALLEGATIONS OF THE SECOND COMPLAINT

Both the Dismissed Complaint and the Second Complaint assert various statutory and common-law violations based on Viacom's and Google's use of cookies.  Plaintiffs, minors under the age of 13, allege that they were registered users of Nick.com, a Viacom website.  Second Complaint ¶ 4.  Plaintiffs contend that Viacom and Google each placed cookies on their computers in order to track their Internet browsing.  *Id.* ¶¶ 67–68.  Plaintiffs allege that Viacom's cookies stored their usernames, gender and age, and an anonymized unique identifier ("UUID").  *Id.* ¶ 76.  Plaintiffs claim that Viacom shared this information with Google.  *Id.*  Plaintiffs do not allege, however, that Viacom ever knew their real-world identities.

The Second Complaint differs from the first only in that it adds purported details about information purportedly collected by Google, through services that Google itself offers.  Plaintiffs suggest that Google could combine that information to identify them.  *See generally* Second Complaint ¶¶ 78–92, 99.  That is not enough.

The Second Complaint sets out a series of allegations about how Google collects information about Internet users, *id.* ¶ 64; how Google's DoubleClick business provides Internet ad serving services by operating an ad exchange that acts as a middleman or facilitator between advertisers and what they advertise, *see id.* ¶ 37; "DoubleClick," *http://www.google.com/doubleclick/#tab=publishers* ("DoubleClick Ad Exchange is a real-time digital ad marketplace that connects publishers with agencies, ad networks and third-party technology providers."); and that Google maintains a variety of other services, such as its eponymous search engine, *id.* ¶ 80(b), the social network called Google Plus, *id.* ¶ 80(a), and the email service called Gmail, *id.* ¶ 80(c).  It then suggests Google can combine information collected in its capacity as an ad server through DoubleClick with other information collected by Google from the registered and logged-in users of its other services.  *Id.* ¶¶ 85–86.

None of that is sufficient to state a claim.  First, Plaintiffs do not allege that *they themselves* have signed up for any Google services.  This is not surprising:

Google policy limits registration for these services to only those users 13 and older.  That makes all members of the purported class ineligible for these services.[1]

Second, the Second Complaint has no specific, well-pled allegation that Google actually commingles information from the DoubleClick cookie with information it receives from users through its other services.  In fact, it cites to a Google Privacy Policy from March 1, 2012, which affirmatively states that Google does **not** link "DoubleClick cookie information with personally identifiable information."  *Id.* ¶ 85.  Plaintiffs do not allege that, prior to March 1, 2012, Google ever linked information from the DoubleClick cookie with information that Google collected through other services it offers.  Instead, all the Second Complaint states is that there was not "any public commitment by Google that it would not."  *Id.* ¶ 86.[2]

---

[1]   *See* "Age Requirements on Google Accounts," *https://support.google.com/ accounts/answer/1350409?hl=en* ("Below are the minimum age requirements to own a Google Account:  United States:  13 or older").  This Court may properly consider publicly available materials relating to Google's services, as they are integral to Plaintiffs' factual allegations.  *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (a court considering a Rule 12(b)(6) motion may consider documents that, although not attached to the complaint, are integral to it).

[2]   Plaintiffs note that the change in Google's Privacy Policy occurred approximately nine months *before* they filed suit.  *Id.* ¶ 86.  Because no Plaintiff alleges that he or she visited Nick.com prior to March 1, 2012, it is unclear at best what relevance Plaintiffs' allegations about the DoubleClick Privacy Policy could have to this lawsuit.

Third, although Plaintiffs then make the conclusory assertion that "[i]n the case of Nick.com, Google . . . knows user's [*sic*] full names, hometowns, specific geographic locations, email addresses, and more," *id.* ¶ 92, they nowhere allege **how** it even would be possible for Google to know this information about Nick.com users given that Nick.com is not itself a "Google platform" purportedly collecting the information. *Id.* ¶ 96. Nor do Plaintiffs allege that they are users of other Google products that could have collected and combined such information.

The Second Complaint thus suffers from exactly the same defect as the Dismissed Complaint: It does not allege that Viacom knew Plaintiffs' real-world identities, let alone that their real-world identities were disclosed to or learned by Google. The additional allegations about "the DoubleClick persistent cookie identifier," *id.* ¶ 76, do not cure this defect because the DoubleClick cookie is not alleged to contain any personal information allegedly collected by Google's other services. Rather, it is identified repeatedly as separate from the cookies used by Google for those services. *See id.* ¶ 80(a) ("Google's social network at Google Plus tracks users with cookies from DoubleClick . . . . *[i]n addition to DoubleClick cookies*, Google tracks its social network users with cookies from plus.google.com, clients6.google.com, and talkgadget.google.com." (emphasis added)).

Plaintiffs also list a variety of statements by Google, all from contexts outside of the conduct alleged in this case, relating to the anonymity of cookies and IP addresses. *See id.* ¶¶ 87–90.  According to Plaintiffs, these statements indicate that Google removes cookie data and IP addresses in order to "anonymize" log data. *Id.* ¶ 89.  Plaintiffs do not, however, allege that cookie data or IP addresses are traceable to a unique, identifiable individual – indeed, they quote a Google employee who says the opposite. *See id.* ¶ 90 (quoting a Google software engineer who noted that "[a] black-and-white declaration that all IP addresses are always personal data incorrectly suggests that every IP address can be associated with a specific individual").

In addition, Plaintiffs assert that "[a]s a result of Google's ubiquitous presence on the Internet, the information Viacom discloses to Google personally identifies the plaintiffs," *id.* ¶ 94, and that Viacom "is aware of Google's ubiquitous presence on the Internet and its tracking of users across DoubleClick partner websites," *id.* ¶ 94.  Neither of these conclusory claims of "ubiquity" is supported by any allegation of fact.

## ARGUMENT

On a motion to dismiss, "a legal conclusion couched as factual allegation" gets no credence or deference. *In re Nickelodeon Consumer Privacy Litig.*, MDL No. 2443, 2014 WL 3012873, at *5 (D.N.J. July 2, 2014) (hereinafter "*In re*

*Nickelodeon*") (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007));

*see id.* at *8 (noting that Plaintiffs' VPPA allegations against Google were "wholly

conclusory, and . . . not supported by any factual allegations whatsoever"); *id.* at

*18 (noting that Plaintiffs' NJCROA claim was "devoid of factual allegations" as

to damages); *id.* at *19 (noting that Plaintiffs' intrusion upon seclusion claim "does

not explain factually" how Defendants' actions were offensive).  This guiding

principle – that Plaintiffs must plead facts, not rely on bald assertions and

speculative theories – supports dismissal of the Second Complaint with prejudice

and in its entirety.  Plaintiffs fail to allege "enough facts to state a claim to relief

that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007),

and instead continue to rely upon "legal conclusion[s] couched as . . . factual

allegation[s]."  *Baraka*, 481 F.3d at 195; *see also Fowler v. UPMC Shadyside*, 578

F.3d 203, 210–11 (3d Cir. 2009).

     This principle, as applied to this case, means the following:

- For purposes of VPPA, personally identifiable information ("PII") "is
  information which must, without more, itself link an actual person to
  actual video materials."  *In re Nickelodeon,* 2014 WL 3012873, at
  *10.

- For the NJCROA claim, Plaintiffs' theory of damage to business or
  property must be supported with specific allegations of fact as to

damages they themselves suffered. *Id.* at *18. As this Court put it:

"just because Defendants can monetize Plaintiffs' Internet usage does

not mean Plaintiffs can do so as well." *Id.*

- For Plaintiffs' intrusion claim, they need to "explain factually how

  Defendants' collection and monetization of online information would

  be offensive to the reasonable person." *Id.* at *19.

Notwithstanding this Court's prior rulings, the Second Complaint still fails

to satisfy these fundamental pleading requirements. That failure supports

dismissing these claims, this time with prejudice.

# I.    Plaintiffs' New Allegations Still Do Not State A VPPA Claim.

## A.    Plaintiffs Still Do Not Allege Disclosure Of Their Personally Identifiable Information.

The Second Complaint does nothing to remedy Plaintiffs' failure to allege

that Viacom disclosed information that "could ***without more*** serve to identify an

actual, identifiable Plaintiff." *In re Nickelodeon*, 2014 WL 3012873, at *10

(emphasis added). Plaintiffs cannot allege a VPPA claim by speculating that

various datasets ***might*** be combined in ways that identify them. *Id.* at *11 (noting

that although information allegedly disclosed by Viacom "might one day serve as

the basis of personal identification after some effort on the part of the recipient, but

the same could be said for nearly any type of personal information; this Court

reads the VPPA to require a more tangible, immediate link."). The Second

Complaint only adds more dots Plaintiffs ask the Court to assume could be connected. There is not one well-pled allegation that this connection actually can or does take place. In short, Plaintiffs continue to object to the disclosure of anonymous identifiers – like the DoubleClick ID – but do not plead the disclosure of the type of personally identifiable information required to state a claim under VPPA. *See* 18 U.S.C. § 2710(a)(3).

Congress made clear that the key phrase "identifies a person," 18 U.S.C. § 2710(a)(3), was intended to capture only "information that identifies *a particular person*," S. Rep. 100-599, *reprinted in* 1988 U.S.C.C.A.N. 4342-1 (emphasis added), not any form of information that "*may after investigation* lead to the identification of a specific person's video viewing habits," *In re Nickelodeon*, 2014 WL 3012873, at *10 (emphasis added). Accordingly, VPPA proscribes only the disclosure of "information which must, ***without more***, itself link an ***actual person*** to actual video materials." *Id.* (emphasis added).

Plaintiffs do not allege that the information that Viacom collected or disclosed – without more – identified them or could have identified them. The sole additional allegation about disclosure in the Second Complaint is the use of the DoubleClick persistent cookie identifier. Second Complaint ¶ 76; *see and compare In re Nickelodeon*, 2014 WL 3012873, at *1 (noting that the content allegedly disclosed "includes a Plaintiff's: 'IP address'; 'browser settings';

'unique device identifier'; 'operating system'; 'screen resolution'; 'browser version'; and certain 'web communications,' specifically 'detailed URL [Uniform Resource Locator] requests and video materials requested and obtained from Viacom's children's websites'" (all quotations taken from the Dismissed Complaint)).  When rhetoric and speculation are set aside, Plaintiffs merely allege that the DoubleClick cookie is yet another "unique device identifier" of the sort that this Court already held insufficient to support a claim under VPPA.  *Id.* at *10 ("The MCC alleges that Viacom disclosed the following information to Google . . . 'unique device identifier' . . . . None of this information, *either individually or aggregated together*, could without more serve to identify an actual, identifiable Plaintiff . . . .").  Indeed, Plaintiffs quote Google's Privacy Policy as stating that Google "will not combine DoubleClick cookie information with personally identifiable information unless we have your opt-in consent."  Second Complaint ¶ 85.  This statement confirms that the DoubleClick identifier itself is ***not*** personally identifiable information.  In sum, the "without more" plainly required by the law and this Court's prior opinion is nowhere to be found in the Second Complaint.

Plaintiffs' allegations regarding information that Google collects using other services, Second Complaint ¶¶ 79–82, are inapplicable to Plaintiffs themselves. Plaintiffs do not allege that they have created such accounts on such services and it

is against Google policy for users under the age of 13 – like all Plaintiffs and the class they purport to represent – to create accounts on any of its services.  *See supra* note 1 and accompanying text.  *See Lieberson v. Johnson & Johnson Consumer Cos.*, 865 F. Supp. 2d 529, 538 (D.N.J. 2011) ("A complaint must do more than assert generalized facts, it must allege facts specific to the plaintiff.").

Plaintiffs actually underscore the reason that they cannot plead disclosure of personally identifiable information when, in Paragraph 107 of the Second Complaint, they describe Viacom's disclosures as consisting of "information which, without more, when disclosed to Google, links specific persons with their video requests and/or viewing histories" but only when "***based on information that Google already has in its control***."  Second Complaint ¶ 107 (emphasis added).  Thus, according to Plaintiffs, the use of other information ("based on") allegedly collected by Google is required in order to link a specific person to a video.  By definition, therefore, the "without more" requirement is not met.  *See In re Nickelodeon*, 2014 WL 3012873, at *11 ("Certainly, this type of information might one day serve as the basis of personal information *after some effort on the part of the recipient*, but the same could be said for nearly any type of personal information; this Court reads VPPA to require a more tangible, immediate link." (emphasis added)).

Plaintiffs list various other definitions of personally identifiable information in an unsuccessful effort to avoid the limits imposed by VPPA.  Plaintiffs' invocation of the Children's Online Privacy Protection Act ("COPPA") ignores this Court's prior conclusion that "FTC rules implementing that statute are irrelevant to this Court's VPPA analysis."[3]  *Id.* at *12.  Plaintiffs also note that Congress amended VPPA in 2012, long after Google's DoubleClick cookies and the collection of anonymous information online became well-known features of the Internet.  That only confirms that Congress knew quite well how to define personally identifiable information more broadly than it did in VPPA, and chose not to.  *See In re Hannah*, 316 B.R. 57, 60 (Bankr. D.N.J. 2004) ("The judge's role is to interpret and apply the statute, not to rewrite it or undertake judicial legislation.  The Supreme Court has stated 'that Congress says in a statute what it means and means in a statute what it says,' and that when a statute's language is plain, 'the sole function of the courts – at least where the disposition required by the text is not absurd – is to enforce it according to its terms.'" (citing *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000)).

---

[3]   As Viacom noted in support of its original motion to dismiss, the preemption provisions of COPPA, 15 U.S.C. § 6502(d), also preclude liability under all of Plaintiffs' state law theories.  *See Kurns v. A.W. Chesterton, Inc.*, 620 F.3d 392, 395 (3d Cir. 2010), *aff'd*, 132 S. Ct. 1261 (2012) (setting forth doctrine of express preemption when federal law contains "express language" providing for preemption).  Viacom respectfully maintains this position, and incorporates here the full argument set forth in its prior briefs [Dkt. Nos. 43, 60].

The decision on summary judgment in *In re Hulu*, No. C 11-03764, 2014
WL 1724344 (N.D. Cal. Apr. 28, 2014), upon which this Court previously relied,
makes clear why disclosure of the DoubleClick identifier is not, as a matter of law,
actionable under VPPA. The *Hulu* Court considered two identifiers: the comScore
ID, which it held was not PII under VPPA, and the Facebook ID, which it held
could be PII. *See id.* at *12–13. The comScore ID, like the DoubleClick ID,
served only to "allow comScore to recognize users and track their visits to other
websites where comScore collects data." *Id.* at *12. The *Hulu* court observed that
with the comScore ID "[t]here may be substantial tracking that reveals a lot of
information about a person[, but] there is a VPPA violation only if that tracking
*necessarily* reveals an *identified* person and his video watching." *Id.* (emphasis
added).

Plaintiffs never allege facts that meet this standard. Rather, the DoubleClick
ID is not alleged to have any different characteristics than the comScore ID: it
allegedly "recognize[s] users and track[s] their visits to other websites where
[Google] collects data." *Id.* The DoubleClick ID may connect to other
information gathered from Google's purported "ubiquitous presence on the
Internet," but the DoubleClick ID alone does not allegedly – let alone ***necessarily*** –
serve to identify an actual person. Second Complaint ¶ 93. By contrast, "[t]he
Facebook User ID is more than a unique, anonymous identifier. It personally

identifies a Facebook user." *In re Hulu*, 2014 WL 1724344, at *14. That is because "a Facebook user – even one using a nickname – generally is an identified person on a social network platform." *Id.* Plaintiffs nowhere allege a similar link between the DoubleClick ID and an identified person.

Dismissal also is supported by the recent decision granting defendant's motion to dismiss in *Ellis v. Cartoon Network, Inc.*, No. 1:14-cv-00484, 2014 WL 5023535 (N.D. Ga. Oct. 8, 2014). Plaintiff downloaded a Cartoon Network App to watch videos on his smartphone, *id.* at *1, and asserted that Cartoon Network violated VPPA by disclosing his Android ID (an anonymous unique identifier, like the DoubleClick ID) and video viewing history to a third party, *id.* The court observed that, for purposes of VPPA, "the emphasis is on disclosure, not comprehension by the receiving person." *Id.* at *3 (quoting *In re Hulu*, 2014 WL 1724344, at *14). The court held that an Android ID "does not identify a specific person." *Ellis*, 2014 WL 5023535, at *3. Instead, "[l]ike the disclosure in *In re Hulu* that did not violate the VPPA because the third party had to take extra steps to connect the disclosure to an identity," the information disclosed by the Cartoon Network, without more, could not be used to identify plaintiff. *Id.* For this reason, the plaintiff failed to state a claim under VPPA. *Id.* at *4.

Because their new pleading remains devoid of allegations that Viacom disclosed their personally identifiable information, Plaintiffs' VPPA claim against Viacom should be dismissed.[4]

### B. As A Matter Of Law, There Can Be No Cause Of Action Based On The Absence Of An Opt-Out.

Plaintiffs seem to add an additional VPPA theory based on the 2012 amendment to the statute, alleging that Viacom failed to provide Plaintiffs with an opt-out. Second Complaint ¶ 147. To the extent Plaintiffs assert this as a stand-alone theory of liability, they misread the plain text of the statute. 18 U.S.C. Section 2710(b)(2)(B)(iii) requires an opt-out only if a "video tape service provider" ("VTSP") wishes to disclose PII to a third party. Because Plaintiffs fail to allege any disclosure of PII by Viacom, this new VPPA theory necessarily fails as well. Moreover, "one can only be 'aggrieved' for purposes of the statute when a VTSP 'knowingly discloses' his or her 'personally identifiable information,'" *In re*

---

[4] Plaintiffs also add an allegation that Viacom "disclosed substantially more information to third-party tracking companies on its children sites than typical adult websites," citing two different articles from *The Wall Street Journal*. Second Complaint ¶ 56. This assertion adds nothing to Plaintiffs' legal theories, because Plaintiffs do not allege that any of Viacom's alleged disclosures, however many times repeated, violated VPPA.

*Nickelodeon*, 2014 WL 3018273, at *8.  An alleged failure to request consent does not satisfy this requirement.[5]

## II.  Plaintiffs' New Allegations Still Do Not State A Claim Under The New Jersey Computer Related Offenses Act.

Plaintiffs fail to allege any facts showing they were damaged in their business or property as a result of Viacom's conduct, as would be required to state a claim under NJCROA.  N.J. Stat. Ann. § 2A:38A-3 (providing a private right of action for "[a] person or enterprise damaged in business or property").  It is not

---

[5]  Viacom continues to believe that additional grounds for dismissal exist in the arguments that this Court did not previously accept:  (1) Plaintiffs lack Article III standing given the lack of concrete and particularized injury-in-fact.  *See Danvers Motor Co. v. Ford Motor Co.*, 432 F.3d 286, 290–91 (3d Cir. 2005) (Alito, J.); *Doe v. Nat'l Bd. of Med. Exam'rs*, 199 F.3d 146, 153 (3d Cir. 1999) ("The proper analysis of standing focuses on whether the plaintiff suffered an actual injury, not on whether a statute was violated . . . .  [Congress] cannot confer standing by statute alone." ).  (2) Plaintiffs are not "aggrieved" within the meaning of VPPA, 18 U.S.C. § 2710(b).  *See Sterk v. Best Buy Stores, L.P.*, No. 11-C-1894, 2012 WL 5197901, at *5–6 (N.D. Ill. Oct. 17, 2012).  (3) Viacom is not a "video tape service provider," *i.e.*, a provider of "prerecorded video cassette tapes or similar audio visual materials."  18 U.S.C. § 2710(a)(4), because it does not distribute videos in physical media.  Viacom incorporates these arguments by reference from its prior briefs to preserve them in any future proceedings.

In this regard, Viacom notes that, on October 6, 2014, the Supreme Court requested the views of the Solicitor General as to whether to grant certiorari in *Spokeo v. Robins,* No. 13-1339.  *Spokeo* poses the question whether a violation of the words of a federal statute, without real-world actual damage, gives rise to Article III standing.  *See http://www.scotusblog.com/case-files/cases/spokeo-inc-v-robins/.*  Statutory standing also is at issue in *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 988 F. Supp. 2d 434 (D. Del. 2013), currently on appeal to the Third Circuit.

17

enough to allege that a defendant accessed or harvested information on a computer in violation of the NJCROA.  Instead, the plaintiff must point to what data or information was taken from their computer system.  The Second Complaint clearly fails to satisfy this requirement.

In *P.C. Yonkers, Inc. v. Celebrations the Party and Seasonal Superstore, LLC*, 428 F.3d 504, 506 (3rd Cir. 2005), a franchisor filed suit against two former employees who had opened competing stores.  The franchisor alleged that the former employees had, "without authorization," accessed the franchisor's computer system.  *Id*.  The Third Circuit upheld the District Court's denial of a preliminary injunction to the franchisor, noting that the franchisor had provided "no proof of conduct other than access."  *Id*. at 509.  That doomed their NJCROA claims, because the NJCROA "require[s] proof of some activity vis-a-vis the information other than simply gaining access to it."  *Id*.  The franchisor could not satisfy this requirement, as "[i]t is clear that [the franchisor] do[es] not know, ha[s] not shown, and cannot show, what information, if any, was taken" from its computer network.  *Id*.

Similarly, in *PNC Mortg. v. Superior Mortg. Corp.*, No. 09-5084, 2012 WL 627995, at *4–6 (E.D. Pa. Feb. 27, 2012), allegations that a former employee connected her work laptop to the employee's server after she had resigned could not support a NJCROA claim.  *Id*.  Although the conduct was "unauthorized," the

court noted that "there are no facts that show that any data or information was taken when she connected a storage device to her laptop or when she connected her laptop to the [plaintiff's] server." *Id.* (citing *P.C. Yonkers, Inc.*, 428 F.3d at 509). The plaintiff's allegations thus were "simply not sufficient to sustain a claim under [NJ]CROA." *Id.*, 2012 WL 627995, at *5; *see also Mu Sigma, Inc. v. Affine*, *Inc.*, No. 12-1323, 2013 WL 3772724, at *10 (D.N.J. July 17, 2013) (dismissing complaint and noting that plaintiff's NJCROA claim was deficient in part because "Plaintiff does not specify how or whether Defendants allegedly stole its data or what in particular was stolen").

These deficiencies characterized Plaintiffs' prior attempt to plead a NJCROA claim and the Second Complaint does not cure them. *In re Nickelodeon*, 2014 WL 3012873, at *18. The sole additional allegation is far too vague: "Defendants accessed Plaintiffs' and Class Members' computers in order to illegally harvest Plaintiffs' and Class Members' personal information. Through conversion and without consent, Defendants harvested Plaintiffs' personal information . . ." Second Complaint ¶ 153. Nowhere do Plaintiffs allege, with any specificity, what data or information Viacom supposedly took. Accordingly, this allegation cannot form the basis of an NJCROA claim. *See P.C. Yonkers, Inc.*, 428 F.3d at 509; *PNC Mortg.*, 2012 WL 627995, at *4–6.

The Second Complaint seeks to advance the same theory of "business or property" damage under the NJCROA that this Court already rejected: the contention that Defendants' use of cookies permitted the "acquisition and use of Plaintiffs' personal information for marketing purposes," which Plaintiffs equate to "property" damage. *In re Nickelodeon*, 2014 WL 3012873, at *18. This Court previously concluded that "just because Defendants can monetize Plaintiffs' Internet usage does not mean Plaintiffs can do so as well," and held that Plaintiffs needed "allegations demonstrating plausible damage to 'business or property'" to state a NJCROA claim. *Id*. The Second Complaint has no such allegations. Instead, Plaintiffs rely on generalities that do not meet the legally required well-pled allegations:

> Through conversion and without consent, Defendants harvested Plaintiffs' personal information for their unjust enrichment and to the financial detriment of Plaintiffs and Class Members. Had Plaintiffs, Class Members, and/or their parents and/or guardians known that Defendants were converting Plaintiffs' personal information for financial gain, Plaintiffs, Class Members, and/or their parents and/or guardians would have at least expected remuneration for their personal information at the time it was conveyed.

Second Complaint ¶ 153. This falls far short of an allegation that Plaintiffs are unable to monetize their Internet usage as a result of Defendants' conduct. Instead, they rely on a theory of unjust enrichment as the basis for "business or property" damage; a theory this Court already dismissed as failing to demonstrate "plausible damage" under the NJCROA. *In re Nickelodeon*, 2014 WL 3012873, at *18.

20

Indeed, Plaintiffs fail to allege any actual damage.  The placement of cookies on a computer causes no cognizable damage under any legal theory, as courts have repeatedly held, and thus cannot support an NJCROA claim.  *See, e.g.*, *Chance v. Ave. A.*, 165 F. Supp. 2d 1153, 1159 (W.D. Wash. 2001) ("Unlike a computer hacker's illegal destruction of computer files or transmission of a widespread virus which might cause substantial damage to many computers as the result of a single act, here the transmission of an Internet cookie is virtually without economic harm.").

For these reasons, Plaintiffs' NJCROA claim fails as a matter of law.[6]

---

[6]   Plaintiffs' NJCROA claim also fails because the Second Complaint alleges no facts showing that Viacom acted with purpose or knowledge, relying instead once again on conclusory allegations.  All subsections of the NJCROA require that a defendant's conduct be purposeful or knowing to be actionable.  *See* N.J. Stat. Ann. § 2A:38A-3.  In paragraph 152 of the Second Complaint, Plaintiffs assert in conclusory fashion that Viacom's conduct was done "purposefully, knowingly and/or recklessly," but this conclusory allegation may appropriately be disregarded by the Court.  *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."); *see also Mu Sigma, Inc.*, 2013 WL 3772724, at *10 (dismissing an NJCROA claim when plaintiff relied upon a bare allegations that were "entirely conclusory and unsupported by any facts").

21

**III.   Plaintiffs' New Allegations Still Do Not State A Claim For Intrusion Upon Seclusion.**

    **A.   Viacom's Alleged Intrusion Was Not "Highly Offensive" To A Reasonable Person.**

Plaintiffs' claim of intrusion upon seclusion in the Second Complaint amounts to the same type of statements already rejected by this Court:  they are "entirely conclusory, and thus properly disregarded on a motion to dismiss for failure to state a claim."  *In re Nickelodeon*, 2014 WL 3012873, at *19.  They fail in any way to "explain factually how Defendants' collection and monetization of online information would be offensive to the reasonable person, let alone exceedingly so."  *Id*.  Instead, they rely on vague references to (a) supposed violations of criminal and civil statutes and (b) terms of service and industry standards.  Neither is enough.

       1.   **Purported "Criminal" Acts**

Plaintiffs first allege that Viacom's conduct was "highly offensive" because Viacom "violated federal and state civil and criminal statutes designed to protect individual privacy," Second Complaint ¶ 160, and "commit[ed] criminal acts which violated the privacy rights" of Plaintiffs, *id*. ¶ 161.

Those are pure legal conclusions, entitled to no weight, and ignore the rationale of this Court's prior dismissal.  This Court already held that Plaintiffs failed to state a claim under the Wiretap Act, so an alleged violation of the Wiretap Act cannot form the basis of the "highly offensive" component of an intrusion

upon seclusion claim.  Likewise, because Plaintiffs' VPPA claim fails for the

reasons set forth above, an alleged violation of the VPPA is of no avail for their

intrusion upon seclusion claim.  Viacom cannot have violated the Pen Register

Act, as it relates to law enforcement activities and protects identified individuals

who are being investigated for criminal conduct – not Plaintiffs.  *See* 18 U.S.C.

§§ 3121–27.  Plaintiffs' allegation that Viacom violated the CFAA is baseless, as

the CFAA is a federal criminal statute that permits a civil cause of action only

under limited circumstances that are not alleged here.  Courts repeatedly have

dismissed the claims of plaintiffs who asserted that the CFAA was violated by a

defendant's placement of cookies, or the collection of information using cookies.

*See, e.g.*, *In re Google Cookie*, 988 F. Supp. 2d at 448 ("Generally, courts have

rejected the contention that the unauthorized collection, use, or disclosure of

personal information constitutes economic damages for the purposes of the

CFAA."); *LaCourt v. Specific Media, Inc.*, No. SACV 10-1256, 2011 WL 1661532

(C.D. Cal. Apr. 28, 2011) ("Plaintiffs at the very least have failed to plausibly

allege that they and the putative class – even in the aggregate – have suffered

$5,000 in economic damages in a one year period as a result of Specific Media's

actions [in placing cookies on Plaintiffs' computers].").  Plaintiffs' contention that

Viacom violated these various statutes therefore provides no support for an

intrusion upon seclusion claim. *See also Tamayo v. Am. Coradious Int'l, LLC*, No.

11-cv-6549, 2011 U.S. Dist. LEXIS 149124, at *11–12 (D.N.J. Dec. 28, 2011) (noting that "bald assertions" that a defendant violated federal law does not establish that the conduct at issue was highly offensive).

Another basis for dismissal is that the use of cookies to gather anonymous information about online users and the monetization of such information is completely unlike the types of circumstances that New Jersey courts have held to be "highly offensive."  *See, e.g.*, *Leang v. Jersey City Bd. of Educ.*, 198 N.J. 557, 589–90 (N.J. 2009) (teacher could proceed with intrusion upon seclusion claim when coworker falsely reported that teacher had threatened to kill people, and as a result, teacher was taken by the police to a hospital where she underwent a psychiatric evaluation); *Soliman v. Kushner Cos.*, 433 N.J. Super. 153 (N.J. Super. Ct. 2013) (restoring on appeal an intrusion upon seclusion claim where plaintiffs alleged that defendant installed hidden video monitoring and recording equipment in bathrooms); *Del Mastro v. Grimado*, No. BER-C-388-03E, 2005 WL 2002355 (N.J. Super. Ct. 2005) (finding intrusion upon seclusion when woman's ex-boyfriend mailed sexually explicit pictures of her in Christmas cards to her family and friends).

The Second Complaint alleges that "Defendants' unauthorized tracking of the [] Plaintiffs' communication on the Internet . . . is highly offensive to a reasonable person."  Second Complaint ¶ 162.  Viacom's alleged use of cookies is

a lawful activity used by nearly all commercial websites.  As a matter of law, it cannot be deemed highly offensive.  *See In re Google Cookie*, 988 F. Supp. 2d at 449–50  (granting defendant's motion to dismiss complaint asserting that defendant's use of cookies violated federal and state laws); *In re DoubleClick Inc. Privacy Litig.*, 154 F. Supp. 2d 497, 502–03, 519 (S.D.N.Y. 2001) (noting that cookies are "commonly used by Web sites" and granting defendant's motion to dismiss complaint).

Plaintiffs argue that the use of cookies was nonetheless "highly offensive" because "the defendants placed significantly more tracking technologies on children's websites than adult websites to take advantage of the Plaintiffs' vulnerability as children," Second Complaint ¶ 166, and such acts "were perpetrated literally millions of times on millions of children," *id.* ¶ 165.  To prevail on their intrusion upon seclusion claim, however, Plaintiffs must allege facts demonstrating that Viacom's alleged conduct was "more offensive than that which merely annoys, abuses, or harasses."  *Rush v. Portfolio Recovery Assocs. LLC*, 977 F. Supp. 2d 414, 433 n.23 (D.N.J. 2013).  The compiling of anonymous information about Plaintiffs, including the URLs of the websites Plaintiffs visited, does not rise to the same level as, for example, the conduct of the defendant in *Del Mastro*, in which a woman's ex-boyfriend distributed sexually explicit pictures of her in Christmas cards mailed to her family and friends.  2005 WL 2002355, at *4.

25

Nor does the selective citation of surveys in the Second Complaint support the conclusion that the use of cookies is "conduct to which the reasonable man would strongly object" and is "highly offensive" as a matter of law. *Stengart v. Loving Care Agency, Inc.*, 201 N.J. 300, 317 (N.J. 2010); Second Complaint ¶ 164. For example, in one of the surveys Plaintiffs reference, fifty-five percent of respondents did not "strongly agree" with the statement that "[i]t is wrong for advertisers to collect and keep information about where a child goes online and what that child does online." *Id.* ¶ 164(a). Other survey excerpts listed in the Second Complaint asking respondents whether they were "alarmed" "concerned" or "okay" with online tracking and advertising. *See generally id.* ¶ 164. Even if accepted at face value, these excerpts do not indicate that Viacom's conduct was "highly offensive" to a reasonable person under New Jersey law.

### 2. **Terms Of Service**

Plaintiffs also allege that Viacom's conduct is "highly offensive" because Viacom's conduct "violated the Terms of Use of both the Internet Service Providers and the web-browsers employed by the Plaintiffs," Second Complaint ¶ 163, and "violated the online advertising industry and their own standards for respecting the personal information of children," *id.* ¶ 167.

There are two short answers to this. First, it is not "plausible" to argue that a practice as common as cookies somehow violates all of these terms of service. *See*

*Iqbal*, 129 S. Ct. at 1949 ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face' . . . .  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'") (*quoting Twombly*, 550 U.S. at 570).

Second, Plaintiffs' allegation is a purely conclusory statement that deserves no credence or deference on a motion to dismiss.  *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (noting that when evaluating the sufficiency of a complaint a court should "review[] the complaint to strike conclusory allegations"); *In re Nickelodeon*, 2014 WL 3012873, at *19 ("Paragraph 197, which states without more that Defendants' intrusion 'would be highly offensive to a reasonable person' is, of course, entirely conclusory, and thus properly disregarded on a motion to dismiss for failure to state a claim.").

## B.   The Second Complaint Does Not Allege That Viacom Committed An Intentional Intrusion.

An intentional intrusion is a required element for an intrusion upon seclusion claim.  *See Swift v. United Food Commercial Workers Union Local 56*, 2008 WL 2696174, at *3 (N.J. Super. Ct. App. Div. July 11, 2008).  The Second Complaint asserts, in a conclusory fashion, that "the Defendants intentionally intruded upon

the Plaintiffs' solitude or seclusion in that the Defendants took information from the privacy of the Plaintiffs' homes." Second Complaint ¶ 158. This allegation is inadequate, as the Third Circuit has held that "an actor commits an intentional intrusion only if he believes, or is substantially certain, that he lacks the necessary legal or personal permission to commit the intrusive act." *O'Donnell v. United States*, 891 F.2d 1079, 1083 (3d Cir. 1989); *see also Jevic v. Coca Cola Bottling Co. of N.Y., Inc.*, No. 89-4431, 1990 WL 109851, at *8 (D.N.J. 1990) (quoting *O'Donnell*, 891 F.2d at 1083). Plaintiffs have not alleged that Viacom knew or was substantially certain that it lacked the Plaintiffs' permission to place cookies on their browsers. Indeed, given the weight of legal authority supporting the use of cookies, Viacom justifiably believed – and continues to believe – precisely the opposite. *See O'Donnell*, 891 F.2d at 1083.

### C. Plaintiffs Have Not Alleged And Cannot Allege Facts Showing A Reasonable Expectation Of Privacy In The Information At Issue.

Plaintiffs' intrusion upon seclusion claim also fails because Plaintiffs could have no reasonable expectation of privacy in the entirely anonymous data that Viacom allegedly accessed. Under New Jersey law, there is no claim for intrusion upon seclusion "when the actor intrudes into an area in which the victim has either a limited or no expectation of privacy." *White v. White*, 344 N.J. Super. 211, 222 (N.J. Super. Ct. 2001) (holding that wife did not commit tort of intrusion upon seclusion when she read husband's emails that had been stored on family

computer).  "[E]xpectations of privacy are established by general social norms."

*Id.* at 223.  Although a person might have a reasonable expectation in the privacy

of their emails, the same cannot be said about the anonymous information

compiled by cookies.  There is certainly no social norm against the alleged

practices, which the history of failed attempts at litigation in this area shows to be

commonplace.

## CONCLUSION

This Court should dismiss the Second Complaint in its entirety and with

prejudice.

DATED:  October 14, 2014                 DEBEVOISE & PLIMPTON LLP

                                         By:     /s/ Bruce P. Keller

Stephen M. Orlofsky                      Bruce P. Keller
BLANK, ROME, LLP                         Jeremy Feigelson
301 Carnegie Center, 3rd Floor           Kristin Lieske Bryan
Princeton, NJ 08540                      DEBEVOISE & PLIMPTON LLP
(609) 750-7700                           919 Third Avenue
                                         New York, NY 10022
                                         (212) 909-6000

                                         *Attorneys for Defendant Viacom Inc.*