# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **IN RE NICKELODEON CONSUMER PRIVACY LITIGATION** | : | Civil Action No. 12-7829 (SRC)(CLW) |
| | : | |
| | : | Honorable Stanley R. Chesler |
| | : | Motion Return Date: |
| | : | December 15, 2014 |
| This Document Relates to: **All Actions** | : | (Oral Argument Requested) |
| | : | *Document Electronically Filed* |
| | : | |

---

## GOOGLE INC.'S BRIEF IN SUPPORT OF ITS MOTION TO DISMISS THE SECOND CONSOLIDATED CLASS ACTION COMPLAINT UNDER FED. R. CIV. P. 12(B)(6)

---

Jeffrey J. Greenbaum
**SILLS CUMMIS & GROSS P.C.**
One Riverfront Plaza
Newark, New Jersey 07102-5400
Telephone:  (973) 643-7000
jgreenbaum@sillscummis.com

Colleen Bal
(admitted *pro hac vice*)
Michael H. Rubin
(admitted *pro hac vice*)
**WILSON SONSINI GOODRICH & ROSATI, P.C.**
One Market Plaza
Spear Tower, Suite 3300
San Francisco, CA 94105-1126
Telephone:  (415) 947-2000
cbal@wsgr.com
mrubin@wsgr.com

## TABLE OF CONTENTS

**Page**

**STATEMENT OF THE PROCEEDINGS** .......................................................... 1

**BACKGROUND** .......................................................................................... 2

    A.    The Ubiquitous Use of Cookies on the Internet ................................ 3

    B.    Plaintiffs' Browsers Send the Information at Issue to Google Through Routine "GET" Requests ....................................................... 4

    C.    DoubleClick ID Cookies Allow Google to Send More Relevant Ads to Users ....................................................................................... 4

    D.    Plaintiffs' Browsers Send the Same Information to Google Whether or Not a Cookie Is Present on Their Browsers ..................... 5

    E.    The SAC's New Fact Allegations ....................................................... 6

        1.    No New Fact Allegations Regarding CROA Claim ................. 7

        2.    New Fact Allegations Regarding Plaintiffs' Intrusion Upon Seclusion Claim ............................................................ 7

**ARGUMENT** ............................................................................................. 9

I.    **THE NEW JERSEY COMPUTER RELATED OFFENSES ACT CLAIM (COUNT II) SHOULD BE DISMISSED WITH PREJUDICE** ........................................................................................ 10

    A.    Google Did Not Damage Plaintiffs in Business or Property ............ 12

    B.    Plaintiffs Do Not Meet the Remaining CROA Requirements ........... 13

        1.    Plaintiffs Do Not Allege Prohibited Conduct ........................ 13

            a.    CROA Subsections 3(a)-(b) ........................................... 14

            b.    CROA Subsection 3(c) .................................................. 15

            c.    CROA Subsection 3(d) .................................................. 16

            d.    CROA Subsection 3(e) .................................................. 16

        2.    Google Did Not Purposefully or Knowingly Harm Plaintiffs ............................................................................... 16

II.    **THE INTRUSION CLAIM (COUNT III) SHOULD BE DISMISSED WITH PREJUDICE** ................................................... 17

    A.    Google Lacked the Requisite Intent ................................................. 17

B.    The Alleged Intrusion Was Not Highly Offensive ............................. 18

C.    Google Did Not Invade a Legally Private Matter .............................. 23

**CONCLUSION** ....................................................................................................... 25

# TABLE OF AUTHORITIES

## CASES

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................9

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ....................................12, 21, 22

*Borse v. Piece Goods Shop, Inc.*, 963 F.2d 611 (3d Cir. 1992)...............................23

*Bradley v. Atl. City Bd. of Educ.*, 736 F. Supp. 2d 891 (D.N.J. 2010) ...................24

*Brokerage Concepts v. United States Healthcare*, 140 F.3d 494
(3d Cir. 1998).......................................................................................................22

*Burger v. Blair Med. Assocs.*, 964 A.2d 374 (Pa. 2009) .......................................17

*Cal. Pub. Emps. Ret. Sys. v. Chubb Corp.,* 394 F.3d 126
(3d Cir. 2004).......................................................................................................10

*Chance v. Avenue A, Inc.*, 165 F. Supp. 2d 1153 1156
(W.D. Wash. 2001)...............................................................................................22

*Chrisman v. City of Los Angeles*, 65 Cal. Rptr. 3d 701
(Cal. Ct. App. 2007)............................................................................................15

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209 (3d Cir. 2013).............................9

*Dericotte v. Pressler*, No. 10-1323, 2011 U.S. Dist. LEXIS 78921
(D.N.J. July 19, 2011)..........................................................................................13

*Devon Energy Corp. v. Westacott*, No. 09-1689,
2011 U.S. Dist. LEXIS 30786 (S.D. Tex. Mar. 24, 2011) ...............................16

*Dubbs v. Head Start, Inc.*, 336 F.3d 1194 (10th Cir. 2003) ...................................18

*Fairway Dodge, LLC v. Decker Dodge, Inc.*, 191 N.J. 460 (2007).......................16

*G.D. v. Kenny*, 15 A.3d 300 (N.J. 2011).................................................................17

*Hennessey v. Coastal Eagle Point Oil Co.*, 129 N.J. 81 (1992) .............................17

*In re DoubleClick, Inc. Privacy Litig.*, 154 F. Supp. 2d 497
(S.D.N.Y. 2001).............................................................................................*passim*

*In re Facebook Privacy Litig.*, No. C-10-02389,
2011 U.S. Dist. LEXIS 147345 (N.D. Cal. Nov. 22, 2011).........................11

*In re Google Android Consumer Privacy Litig.*, No. 11-MD-02264,
2013 U.S. Dist. LEXIS 42724 (N.D. Cal. Mar. 26, 2013)..........................11

*In re Google Inc. Cookie Placement Consumer Privacy Litig.*,
988 F. Supp. 2d 434 (D. Del. 2013) ......................................................*passim*

*In re Google, Inc. Privacy Policy Litig.*, No. 5:12-cv-01382,
  2014 U.S. Dist. LEXIS 100245 (N.D. Cal. July 21, 2014) ..........................19

*In re Hulu Privacy Litig.*, No. 11-cv-3764,
  2014 U.S. Dist. LEXIS 83661 (N.D. Cal. June 17, 2014) ............................6

*In re iPhone Application Litig.*, 844 F. Supp. 2d 1040
  (N.D. Cal. 2012) ..............................................................................18, 19

*In re iPhone Application Litig.*, No. 11-MD-02250,
  2011 U.S. Dist. LEXIS 106865 (N.D. Cal. Sept. 20, 2011)..........................11

*In re Northwest Airlines Privacy Litig.*, No. 04-126,
  2004 U.S. Dist. LEXIS 10580 (D. Minn. June 6, 2004) ........................20, 21

*In re Pharmatrak, Inc. Privacy Litig.*, 329 F.3d 9 (1st Cir. 2003) .............3, 4, 5, 22

*Integral Dev. Corp. v. Tolat*, No. C-12-06575,
  2013 U.S. Dist. LEXIS 153705 (N.D. Cal. Oct. 25, 2013) ..........................11

*Jevic v. Coca Cola Bottling Co.*, No. 89-443,
  1990 U.S. Dist. LEXIS 8821 (D.N.J. June 6, 1990)..............................17, 18

*Joseph Oat Holdings, Inc. v. RCM Digesters, Inc.*,
  409 F. App'x 498 (3d Cir. 2010) ......................................................10, 11, 15

*Kalow & Springnut, LLP v. Commence Corp.*, No. 07-3442,
  2008 U.S. Dist. LEXIS 48036 (D.N.J. June 23, 2008)................................16

*Lawrence Twp. Bd. of Educ. v. New Jersey*, No. 03-cv-4073,
  2004 U.S. Dist. LEXIS 28590 (D.N.J. Aug. 24, 2004)................................10

*Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010 (N.D. Cal. 2012)....................18, 22

*Low v. LinkedIn Corp.*, No. 11-cv-01468,
  2011 U.S. Dist. LEXIS 130840 (N.D. Cal. Nov. 11, 2011) ........................13

*McNemar v. Disney Store, Inc.*, 91 F.3d 610 (3d Cir. 1996)................................24

*Mu Sigma, Inc. v. Affine, Inc.*, No. 12-1323,
  2013 U.S. Dist. LEXIS 99538 (D.N.J. July 17, 2013) ................................10

*Multiven, Inc. v. Cisco Sys., Inc.*, 725 F. Supp. 2d 887
  (N.D. Cal. 2010) ........................................................................................10

*Netscape Commc'ns Corp. v. ValueClick, Inc.*, 684 F. Supp. 2d 678
  (E.D. Va. 2009)............................................................................................3

*Noonan v. Wonderland Greyhound Park Realty LLC*,
  723 F. Supp. 2d 298 (D. Mass. 2010)......................................................13

*O'Donnell v. United States*, 891 F.2d 1079 (3d Cir. 1989)...................................17

*Oracle Corp. v. SAP AG*, 734 F. Supp. 2d 956 (N.D. Cal. 2010) .........................16

*P.C. Yonkers, Inc. v. Celebrations the Party & Seasonal Superstore,
LLC*, 428 F.3d 504 (3d Cir. 2005) ..........................................................14, 15

*PNC Mortg. v. Superior Mortg. Corp.*, No. 09-5084,
2012 U.S. Dist. LEXIS 25238 (D.N.J. Feb. 27, 2012) ..........................14, 15

*Poltrock v. NJ Auto. Accounts Mgmt. Co.*, No. 3:08-1999,
2008 U.S. Dist. LEXIS 103351 (D.N.J. Dec. 17, 2008) ..................23, 24, 25

*Public Interest Research Grp. v. Magnesium Elektron, Inc.*,
123 F.3d 111 (3d Cir. 1997) ...................................................................10

*Rush v. Portfolio Recovery Assocs. LLC*, 977 F. Supp. 2d 414
(D.N.J. 2013) .............................................................................18, 19, 21, 23

*Santiago v. Warminster Twp.*, 629 F.3d 121 (3d Cir. 2010) ........................9, 19, 20

*Smith v. City of Jackson, Miss.*, 544 U.S. 228 (2005) .................................15

*State v. Reid*, 914 A.2d 310 (N.J. Sup. Ct. App. Div. 2007) ......................23

*Tamayo v. Am. Coradious Int'l, LLC*, No. 11-cv-6549,
2011 U.S. Dist. LEXIS 149124 (D.N.J. Dec. 28, 2011) ........................19, 20

*United States v. Nosal*, 676 F.3d 854 (9th Cir. 2012)................................11

*Vega v. United Recovery Sys., L.P.*, No. 11-5995,
2012 U.S. Dist. LEXIS 16801 (D.N.J. Feb. 9, 2012)....................................23

*WEC Carolina Energy Solutions LLC v. Miller*, 687 F.3d 199
(4th Cir. 2012) .......................................................................................11

*Yuncker v. Pandora Media, Inc.*, No. 11-cv-03113,
2013 U.S. Dist. LEXIS 42691 (N.D. Cal. Mar. 26, 2013) ...........................19

## STATUTES

Cal. Pen. Code § 502(b)(1) .........................................................................15

N.J.S.A. § 2A:38A-3 ...................................................................................11

N.J.S.A. § 2A:38A-1(a) ..............................................................................15

## RULES

Fed. R. Civ. P. 12(b)(6)..................................................................................9

## MISCELLANEOUS

Restatement (Second) of Torts § 652B (1977) .......................................17

**STATEMENT OF THE PROCEEDINGS**

This is the second motion to dismiss filed by Google in this multi-district lit-igation in which Plaintiffs challenge Google's use of Internet "cookies" to deliver advertising services to Viacom.  Google's first effort was entirely successful: in an Order dated July 3, 2014, the Court dismissed Plaintiffs' original complaint in full.  However, it permitted Plaintiffs to replead two state law claims against Google: (1) the New Jersey Computer Related Offense Act ("CROA") and (2) the common law claim for intrusion upon seclusion.  The Order identified specific failures in Plain-tiffs' pleading of these two claims that Plaintiffs would, at a minimum, have to cor-rect in any amended complaint.  But Plaintiffs' Second Consolidated Class Action Complaint ("SAC") comes nowhere close to fixing these deficiencies, much less the additional failures Google previously identified.

*CROA Claim.*   The Court dismissed the CROA claim because Plaintiffs' original complaint failed to allege "business or property" damage.  Order at 35 (Dkt. No. 65).  The Court expressly rejected Plaintiffs' argument that Defendants' alleged "acquisition and use of Plaintiffs' personal information for marketing pur-poses" would constitute plausible damage to their business or property sufficient to plead the claim.  *Id*.  Plaintiffs' SAC does not even purport to allege a new type of injury, let alone the requisite "business or property damage"; it merely substitutes different words to say the same thing as in the original complaint.  The CROA claim can be dismissed on this ground alone, but it also fails because Plaintiffs do not allege (i) any facts to satisfy the specific wrongful conduct required to plead a claim under any subsection of the CROA, or (ii) that Google purposefully or knowingly harmed Plaintiffs.

*Intrusion upon Seclusion.*   The Court dismissed Plaintiffs' intrusion claim because the complaint "[did] not explain factually how Defendants' collection and monetization of online information would be offensive to the reasonable per-

1

son, let alone exceedingly so." Order at 37. In the SAC, Plaintiffs attempt to show that Google's ordinary use of cookies should be viewed as "highly offensive." Plaintiffs' hodgepodge of new factual allegations does not come close to clearing that high bar. Google uses cookies in online advertising; so does virtually every other online advertiser. There is nothing offensive about that common practice, which provides tremendous benefits to consumers and advertisers alike.

Plaintiffs' intrusion claim should therefore be dismissed for failure to meet the "highly offensive" requirement. It should be dismissed for the additional reasons that Plaintiffs do not allege (i) that Google knew and intended that placing cookies on Plaintiffs' browsers was unlawful (which it was not), or (ii) that Google obtained private information as a result of its placement of cookies.

Plaintiffs' opportunities to try to plead viable claims against Google have been more than sufficient. Their failure to do so, even with the Court's guidance, demonstrates that they cannot. Google respectfully requests that the Court dismiss the SAC with prejudice.

## BACKGROUND

This Court by now is familiar with Plaintiffs' allegations about the operation of the Internet and Google's use of cookies. In addition to Google's well-known search and email services, it also provides advertising services to websites. Although website operators typically generate much of the content displayed to visitors of their websites, many employ advertising services like those that Google offers to deliver ads to their visitors. Viacom is one such website operator with respect to the Nickelodeon websites at issue here. Plaintiffs' claims against Google challenge its use of the Internet cookies that help Google provide these advertising services to Viacom. Google uses "DoubleClick ID cookies," introduced over a decade ago, to deliver ads to visitors to Viacom's websites.

Google could never have placed these cookies if it had not been invited by Viacom to do so.

The SAC does not deviate from these same core allegations.[1]

### A.    The Ubiquitous Use of Cookies on the Internet

Internet "cookies" are small text files that are transmitted between a website and an Internet browser.  SAC ¶ 31 (Dkt. No. 73); *see also In re Google Inc. Cookie Placement Consumer Privacy Litig.* ("*Cookie Litig.*"), 988 F. Supp. 2d 434, 439 (D. Del. 2013).  "Cookies are widely used on the Internet by reputable websites to promote convenience and customization."  *In re Pharmatrak, Inc. Privacy Litig.*, 329 F.3d 9, 14 (1st Cir. 2003); *see* SAC ¶¶ 32-33, 35; *Netscape Commc'ns Corp. v. ValueClick, Inc.*, 684 F. Supp. 2d 678, 682 (E.D. Va. 2009) ("[T]oday the 'cookies' technology is ubiquitous, and plays a large role in Internet users' Web browsing."); *In re DoubleClick, Inc. Privacy Litig.*, 154 F. Supp. 2d 497, 504 (S.D.N.Y. 2001) (describing DoubleClick advertising service created over twelve years ago to serve tailored ads using cookies).  Cookies allow websites to retain the contents of users' online shopping carts, keep users logged into websites between visits, and store users' preferences.  *Pharmatrak*, 329 F.3d at 14.  Cookies are useful for Internet advertising because they allow for the display of more relevant ads.  SAC ¶¶ 35-37, 45; *see also* Order at 3-4 ("The information is used by Google . . . 'to sell targeted advertising' based upon Plaintiffs' 'individualized web usage . . .'").  The Google advertising cookie at issue is known as the DoubleClick ID cookie.  *See* SAC ¶ 79.

---

[1] Attached hereto is the redlined comparison of the SAC against the original complaint that was the subject of Google's first motion to dismiss and the Court's July 3, 2014 Order.  Plaintiffs provided this redline at Defendants' request. *See* Exhibit A to Declaration of Jeffrey J. Greenbaum.

**B.     Plaintiffs' Browsers Send the Information at Issue to Google Through Routine "GET" Requests**

Whenever a computer user types a website address (a "URL") into a browser or clicks a website link, the browser sends a request—a "GET" request—asking the website for instructions to load the webpage.  SAC ¶¶ 27-29, 43.  The GET request includes certain information generated by the browser that enables the website to display the correct content.  *Id.* ¶¶ 25, 27; *DoubleClick*, 154 F. Supp. 2d at 503 ("This communication may contain data submitted as part of the request, such as a query string or field information.").  The website responds by telling the browser where and from which third parties to retrieve the content that makes up the webpage—the words, pictures, videos, and ads.  SAC ¶¶ 27-29, 37-39, 44.  The browser then sends additional GET requests to any third parties (such as Google) that have elements of the sought-after content, telling those third parties the URL of the page the user is trying to view and other information about the user's browser (such as its location and operating system).  *Id.* ¶¶ 29, 42.  Only by receiving this information from a user's GET request(s) can third parties like Google send the content back to the user's browser so that the webpage the user requested is properly displayed.  *Id.* ¶¶ 27-29, 39-42.  This back-and-forth between browsers and third parties is a standard and essential function of the Internet.

**C.     DoubleClick ID Cookies Allow Google to Send More Relevant Ads to Users**

Plaintiffs do not allege that Google's DoubleClick ID cookie collects information from Internet users.  Rather, if a DoubleClick ID cookie is present on a browser that visits a webpage displaying a Google ad, the cookie value—an alphanumeric number set by Google—is sent by the browser to Google's server as part of the GET command.  *See id.* ¶¶ 35-45; *Pharmatrak*, 329 F.3d at 14 ("A

cookie is a piece of information sent by a web server to a web browser that the browser software is expected to save and to send back whenever the browser makes additional requests of the server.").  Plaintiffs do not allege that any additional or different information is sent from their browsers to Google in the GET command when a cookie is present, other than the cookie value itself.

The cookie value allows Google to recognize a browser when it visits a webpage displaying a Google ad, and thereby allows Google to *organize* the information that Plaintiffs were *already sending* to Google in GET requests.  SAC ¶¶ 35-45; *DoubleClick*, 154 F. Supp. 2d at 503.  The presence of the cookie enables Google to present more relevant ads to the browser at the next page the browser visits that employs Google's ad services.  *See* SAC ¶¶ 33, 35-37, 45; Order at 3-4 (Google uses information "'to sell targeted advertising' based upon Plaintiffs' 'individualized web usage . . .'"); *DoubleClick*, 154 F. Supp. 2d at 505; *see also Cookie Litig.*, 988 F. Supp. 2d at 439-40; *Pharmatrak*, 329 F.3d at 14.

### D.   Plaintiffs' Browsers Send the Same Information to Google Whether or Not a Cookie Is Present on Their Browsers

The information generated and sent by Plaintiffs' browsers—including the URL of the websites they are visiting and the other information they argue is "personal information"—is provided voluntarily to websites and third parties like Google in GET requests before the websites or third parties ever send any communications back to Plaintiffs' browsers.  *Id*. ¶¶ 25-29, 37-43.  This provision of information is what enables Internet users to access the websites they request to see, and the advertisements displayed on those sites.  Plaintiffs' browsers send this same information to the websites they access and to Google's advertising system *regardless of whether a DoubleClick ID cookie is present on their browsers.* *Id*. ¶¶ 23-29, 37-43, 73; *see also* Pls. Opp. to Defs. Mots. to Dismiss at 34 (Dkt. No. 52) ("Google would still receive URLs in the form of GET requests."); *Cook-*

*ie Litig.*, 988 F. Supp. 2d at 443 ("[P]laintiffs' browsers voluntarily sent to Google the information inputted by plaintiffs [as part of the GET request], regardless of whether plaintiffs' browsers had any Google cookies set."); *id.* at 444 ("[P]laintiffs' browsers would send a URL [to Google as part of the GET request] regardless of whether a third party cookie was set.").

In addition to the GET request mechanism, Plaintiffs also claim that Google cookies receive information directly from Viacom cookies. *See, e.g.*, *id.* ¶¶ 68, 70. But these allegations are conclusions, not facts, and they are implausible. In particular, Plaintiffs allege that Viacom "transmitted the Plaintiffs' subsequent communications to Google *through* [its] persistent tracking cookies" and "provided Google with access to the profile and other information contained within Viacom's first party cookies." *Id.* (emphasis added). But Plaintiffs do not allege any facts to show how communications can somehow be transmitted "through" cookies, which Viacom admits are just alphanumeric text files. *See* SAC ¶¶ 31, 43, 45. Nor do Plaintiffs allege facts to explain how – contrary to the ordinary operation of cookies on the Internet – cookies set by Viacom on the Viacom domain can somehow be accessed and read by Google. *See In re Hulu Privacy Litig.*, No. 11-cv-3764, 2014 U.S. Dist. LEXIS 83661, at *15 (N.D. Cal. June 17, 2014) ("The only servers that can access a particular cookie are those associated with the domain that wrote the cookie.").

### E.    The SAC's New Fact Allegations

The SAC introduces a number of new fact allegations pertaining to Google, apparently intended to try to save the CROA and intrusion claims from dismissal. They fall far short.

### 1.      No New Fact Allegations Regarding CROA Claim

Plaintiffs make little effort to try to save their CROA claim, which the Court dismissed for failure to allege injury to business or property, rejecting Plaintiffs' argument that Defendants' alleged collection of their personal information constituted the requisite injury. *See* Order at 35.  Plaintiffs add no new fact allegations showing injury to business or property.  Instead, they add a single, new paragraph of legal conclusions to the body of the CROA claim.  That paragraph does no more than describe in different words the same claimed "injury" based on alleged collection of Plaintiffs' personal information that the Court already deemed insufficient to state a CROA claim:

> Specifically, Defendants accessed Plaintiffs' and Class Members' computers in order to illegally harvest Plaintiffs' and Class Members' personal information.  Through conversion and without consent, Defendants harvested Plaintiffs' personal information for their unjust enrichment and to the financial detriment of Plaintiffs and Class Members.  Had Plaintiffs, Class Members, and/or their parents and/or guardians known that Defendants were converting Plaintiffs' personal information for financial gain, Plaintiffs, Class Members, and/or their parents and/or guardians would have at least expected remuneration for their personal information at the time it was conveyed.

SAC ¶ 153.

### 2.      New Fact Allegations Regarding Plaintiffs' Intrusion Upon Seclusion Claim

*Allegations Directed to "Highly Offensive" Element*.  Plaintiffs do add new fact allegations to try to show that Google's alleged intrusion was "highly offensive," but none cures the deficiencies identified by the Court.

*First*, Plaintiffs speculate that a URL could in theory contain "substantive and often sensitive content" if a hypothetical child were to search for and visit a website about divorce.  For example, they hypothesize that a Plaintiff "may" enter a query about his/her parents' divorce into the Google search engine, review a list

of search results, select a result that "would" send his browser to a website called "WikiHow" (at the URL http://www.wikihow.com/Deal-With-Your-Parents'-Divorce), and then receive a Google cookie on his/her browser.  SAC ¶ 74.  Plaintiffs, however, do not allege that they *actually visited* the WikiHow website. Even if they had, it would be irrelevant to the allegations against Google.  As the Court recognized, "this lawsuit . . . focuses exclusively on . . . Viacom websites and the Defendants' data collection activities in regards to those sites."  Order at 15; *see also id.* at 26 n.12 (finding Plaintiffs' allegations about "'other websites on which Google places advertisements'" "conclusory" and "made with no factual support").

*Second*, Plaintiffs reference the user agreements of various Internet service providers and web browsers.  *See* SAC ¶¶ 65-66.  Their purpose in referencing these agreements is unclear, particularly since they concede that the provisions they cite exclusively govern the conduct of the *consumers* of those services.  Thus what is clear is that the cited provisions do not purport to define acceptable social norms for Internet advertisers like Google, let alone show that Google's use of the DoubleClick ID cookie somehow constitutes an egregious breach of those norms. Nowhere do Plaintiffs allege that Google's advertising service is engaged in anything other than industry-standard practices.

*Third*, Plaintiffs cite various surveys regarding online privacy and children. They are all far-afield of the issues relevant here.  None purports to measure whether Google's use of cookies (or any analogous conduct) is "highly offensive."  *Id.* ¶ 164.  And none considers the benefits of cookies nor the fact that cookies are standard, well-known, and fundamental to the provision of countless Internet services.  *Id.*

*Allegations Directed to "Legally Private Matter" Requirement.*  The SAC adds a series of allegations that Google collects personally identifiable infor-

8

mation from Internet users when they register to become account holders for certain Google services, such as Google's email service (Gmail) or social network (Google Plus).  *Id.* ¶¶ 79-99.  *But Plaintiffs do not and cannot allege that they are registered Google account holders.*[2]  *See id.* ¶¶ 9-14 (only alleging that Plaintiff "has been a registered user of the website Nick.com").  Nor do they show how users' voluntary provision of information to register for these Google services would be at all relevant to Google's use of the DoubleClick ID cookie to serve advertising to visitors of Viacom's Nickelodeon websites.

**ARGUMENT**

Plaintiffs' SAC should be dismissed under Rule 12(b)(6) for failure to state a claim.  "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013).  The Court must "disregard naked assertions devoid of further factual enhancement."  *Santiago v. Warminster Twp.*, 629 F.3d 121, 131 (3d Cir. 2010).  Thus, while the Court accepts as true all material allegations, it need not accept as true conclusory allegations, unwarranted inferences, or legal conclusions cast in the form of factual allegations.  *Iqbal*, 556 U.S. at 678-79; *Santiago*, 629 F.3d at 131-33.  Because Plaintiffs have not stated a viable CROA or intrusion claim against Google,[3] those claims should be

---

[2] Plaintiffs cannot be registered Google account holders.  Because they are all minors under the age of 13, they are prohibited by Google from registering for a Google account.  *See* http://www.google.com/publicpolicy/issues/family-safety.html.

[3] The SAC contains language suggesting that Plaintiffs continue to assert a VPPA claim against Google.  *E.g.*, SAC at 39 ("Children's Video Subclass v. All Defendants").  But this appears to be legacy language from prior complaints.  As Google previously explained and as the Court decided, Plaintiffs' VPPA allega-
(continued...)

dismissed for failure to state a claim.[4]  And because amendment of their complaint would be futile, the action should be dismissed with prejudice. *See Cal. Pub. Emps. Ret. Sys. v. Chubb Corp.,* 394 F.3d 126, 166 (3d Cir. 2004) (denying leave to amend because plaintiffs failed to follow the "detailed roadmap for curing the deficiencies in their claims"); *Lawrence Twp. Bd. of Educ. v. New Jersey*, No. 03-cv-4073, 2004 U.S. Dist. LEXIS 28590, at *34 (D.N.J. Aug. 24, 2004) (Chesler, J.) (denying leave to amend because "there is no relief which this Court can grant" the plaintiffs).

## I.   THE NEW JERSEY COMPUTER RELATED OFFENSES ACT CLAIM (COUNT II) SHOULD BE DISMISSED WITH PREJUDICE

"The CROA is an anti-computer-hacking statute."  Order at 35.  CROA claims are "similar" to Computer Fraud and Abuse Act ("CFAA") claims and "mirror" claims under § 502 of the California Penal Code (the "CCL").  *Mu Sigma, Inc. v. Affine, Inc.*, No. 12-1323, 2013 U.S. Dist. LEXIS 99538, at *30 (D.N.J. July 17, 2013); *Joseph Oat Holdings, Inc. v. RCM Digesters, Inc.*, 409 F. App'x 498, 504 (3d Cir. 2010).[5]  The CROA has never been applied to ordinary

---

(...continued from previous page)

tions against Google are not properly before the Court because the VPPA claim was dismissed with prejudice.  (Dkt. Nos. 66, 69, 74).

[4] In its prior motion to dismiss, Google argued that Plaintiffs lack Article III standing.  *See* Dkt. Nos. 44-1, 61.  While the Court agreed with Google that Plaintiffs' theory of economic injury was "not legally cognizable," it concluded that Plaintiffs could establish statutory standing by stating a viable claim.  Order at 7-9.  Google respectfully disagrees, and therefore incorporates its prior standing arguments to preserve them for appeal, even though objections to Article III standing cannot be waived.  *Public Interest Research Grp. v. Magnesium Elektron*, 123 F.3d 111, 117 & n.5 (3d Cir. 1997).

[5] The CCL and CFAA are essentially coextensive.  *See Multiven, Inc. v. Cisco Sys., Inc.*, 725 F. Supp. 2d 887, 895 (N.D. Cal. 2010).  Both were enacted to combat computer hackers and malicious viruses, not ordinary commercial activity.
(continued...)

Internet activity of the type Plaintiffs challenge here, and claims challenging such conduct have been repeatedly rejected under both the CCL and CFAA.  *See, e.g.*, *In re iPhone Application Litig.*, No. 11-MD-02250, 2011 U.S. Dist. LEXIS 106865, at *33-41 (N.D. Cal. Sept. 20, 2011); *In re Google Android Consumer Privacy Litig.*, No. 11-MD-02264, 2013 U.S. Dist. LEXIS 42724, at *21-24, *33-37 (N.D. Cal. Mar. 26, 2013); *see also Cookie Litig.*, 988 F. Supp. 2d at 447-50.

To state a claim under the CROA, Plaintiffs must allege that Google (1) "damaged [Plaintiffs] in business or property" by (2) engaging in enumerated conduct.  N.J.S.A. § 2A:38A-3.  The Court dismissed Plaintiffs' first effort to plead a CROA claim because their original complaint was "devoid of factual allegations regarding the 'business or property' damage Plaintiffs have suffered as a result of Defendant collecting and monetizing their online information."  Order at 35.  The Court gave Plaintiffs leave to amend this claim, but cautioned that "[w]ithout allegations demonstrating plausible damage to 'business or property,'

---

(...continued from previous page)

*WEC Carolina Energy Solutions LLC v. Miller*, 687 F.3d 199, 201, 207 (4th Cir. 2012) (although it allows certain civil claims, the CFAA is "primarily a criminal statute designed to combat hacking," and courts should not "transform[] a statute meant to target hackers into a vehicle for imputing liability to [defendants] who access computers or information in bad faith."); *United States v. Nosal*, 676 F.3d 854, 857-58 (9th Cir. 2012) (en banc) (CFAA is an "anti-hacking statute," not "a sweeping Internet-policing mandate"); *In re Facebook Privacy Litig.*, No. C-10-02389, 2011 U.S. Dist. LEXIS 147345, at *14 & n.8  (N.D. Cal. Nov. 22, 2011), *aff'd in part, rev'd in part, remanded by Facebook Privacy Litig. v. Facebook, Inc.*, 572 F. App'x 494 (9th Cir. 2014) (CCL not aimed at abuse of a "standard web browser function"); *Integral Dev. Corp. v. Tolat*, No. C-12-06575, 2013 U.S. Dist. LEXIS 153705, at *10 (N.D. Cal. Oct. 25, 2013) (describing CFAA and CCL as "anti-hacking statutes").  The CROA should be interpreted through the lens of that same policy objective.  *See* Order at 35 (describing the CROA as an "anti-hacking statute"); *Joseph Oat Holdings*, 409 F. App'x. at 503, 504, 506; (same).

Plaintiffs cannot state a claim for relief under the CROA." *Id.* The new paragraph that Plaintiffs add to the SAC to support their CROA claim does not cure this defect. The claim also fails because Plaintiffs do not allege that Google engaged in any conduct prohibited by the statute.

### A.    Google Did Not Damage Plaintiffs in Business or Property

Plaintiffs add a single new paragraph to the CROA claim seeking to correct their failure to allege the required injury to "business or property." Paragraph 153 alleges the legal conclusions that (1) Google "accessed Plaintiffs' and Class Members' computers in order to illegally harvest [their] personal information"; (2) Google "convert[ed]" Plaintiff's personal information "for financial gain"; (3) this resulted in some unspecified way in "financial detriment" to Plaintiffs; and (4) had Plaintiffs known of this alleged activity, they would have "at least expected remuneration." SAC ¶ 153. Plaintiffs add no new facts to support these conclusions.

The new legal assertions do not save Plaintiffs' CROA claim. As an initial matter, they are unsupported and too speculative to be considered on a motion to dismiss. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (a complaint "requires more than labels and conclusions"). But even if credited, they are nothing more than a rehashing of Plaintiffs' prior claim that collection and use of their personal information equates to property damage. *See* SAC ¶ 153. The Court expressly rejected that theory, finding that even if Google benefited from its alleged use of Plaintiffs' personal information, it did not follow that Plaintiffs suffered any injury, much less injury to "business or property." Order at 35. ("[J]ust because Defendants can monetize Plaintiffs' internet usage does not mean Plaintiffs can do so as well."); *see also id.* at 7 (Plaintiffs' belief that they could individually monetize their data is "indistinguishable from the belief that a football

fan could sell her eyeballs to a TV network for four cents because an advertiser pays $4 million to reach 100 million viewers during the Super Bowl"). Plaintiffs' rhetorically labeling the alleged collection of information a "harvest" or a "conversion" does not change the analysis. They still have not identified any plausible injury to their business or property. *See, e.g., Cookie Litig.*, 988 F. Supp. 2d at 442 (allegations that personal information "has value to third-party companies" is insufficient to show injury); *Low v. LinkedIn Corp.*, No. 11-cv-01468, 2011 U.S. Dist. LEXIS 130840, at *10-15 (N.D. Cal. Nov. 11, 2011) (general allegations that consumer information is valuable and that plaintiffs were not compensated for use of their information are insufficient to show injury). The CROA claim should be dismissed with prejudice.

**B.     Plaintiffs Do Not Meet the Remaining CROA Requirements**

Plaintiffs' CROA claim also fails for the additional reasons Google identified in its first Motion to Dismiss. *First*, Plaintiffs allege no facts that Google engaged in any prohibited conduct. *Second*, Plaintiffs allege no facts that Google purposefully or knowingly harmed them.

**1.     Plaintiffs Do Not Allege Prohibited Conduct**

Plaintiffs cannot and do not allege facts sufficient to show that Google violated any of the specific conduct prohibited by the CROA.[6]

---

[6] Plaintiffs' opposition to Google's first motion to dismiss failed to respond to Google's arguments concerning the CROA subsections, and thus Plaintiffs have waived any arguments under them in this litigation. *See* Google's Reply at 22 (Dkt. No. 62); *Noonan v. Wonderland Greyhound Park Realty LLC*, 723 F. Supp. 2d 298, 352 n.133 (D. Mass. 2010) (plaintiff's failure to raise an argument waived that argument both as to plaintiff's current claims as well as derivative claims "in any future amended complaint in this action"); *cf. Dericotte v. Pressler*, No. 10-1323, 2011 U.S. Dist. LEXIS 78921, at *19 (D.N.J. July 19, 2011) ("When a non-
(continued...)

### a.     CROA Subsections 3(a)-(b)

Plaintiffs do not state claims under subsections 3(a)-(b) because they do not allege that Google caused any alteration, damage, taking or destruction of any data or computer.  Rather, Google merely communicated with Plaintiffs' browsers as those browsers were designed to communicate.  SAC ¶¶ 23-29, 37-44.  Nor did Google engage in an unauthorized taking.  Any information it received was *voluntarily sent to it* by Plaintiffs' browsers via a GET request—a routine and necessary part of Internet browsing.  Plaintiffs admit that the only additional information Google obtained by placing cookies on Plaintiffs' browsers was information that it already knew and that it had permission to access: its cookie values.  SAC ¶¶ 43, 45.  Google would receive all the other information whether or not a cookie was present on their browsers.  *See* Pls. Opp. to Defs. Mots. to Dismiss at 34 (Dkt. No. 52) ("Google would still receive URLs in the form of GET requests."); *id.* at 43 ("Google would have received the inputting information, including the URL, regardless of the setting of third-party cookies.").

Even under Plaintiffs' unsupported theory that Google received information in some way directly from Viacom, Plaintiffs admit that Viacom *shared* information with Google or *provided Google with access* to it.  *See supra* p. 6.  They do not allege that Google affirmatively *took* anything without authorization.  Again, this is insufficient to state a claim, because the CROA requires "proof of some activity vis-a-vis the information other than simply gaining access to it."  *P.C. Yonkers, Inc. v. Celebrations the Party & Seasonal Superstore, LLC*, 428 F.3d 504, 509 (3d Cir. 2005); *PNC Mortg. v. Superior Mortg. Corp.*, No. 09-

---

(...continued from previous page)

moving party fails to respond to a moving party's argument, that argument shall be deemed unopposed.").  Google responds to them here only out of an abundance of caution.

5084, 2012 U.S. Dist. LEXIS 25238, at *14 (D.N.J. Feb. 27, 2012) (dismissing CROA claim where "there are no facts that show that any data or information was taken. . ."). There is no subsection 3(a) or (b) violation.

### b.   CROA Subsection 3(c)

Plaintiffs cannot state a subsection 3(c) claim because they cannot show that Google accessed a computer without authorization, which requires conduct akin to *hacking*. *See P.C. Yonkers*, F.3d 428 at 509; Order at 35 (describing the CROA as an "anti-hacking statute"). The term "access" is defined by section 2A:38A-1(a) "in terms redolent of 'hacking' or breaking into a computer," which "is different from the ordinary, everyday use of a computer." *Chrisman v. City of Los Angeles*, 65 Cal. Rptr. 3d 701, 704-05 (Cal. Ct. App. 2007)[7]; *Joseph Oat Holdings*, 409 F. App'x. at 503, 504, 506 (same). The SAC admits that any access Google had to Plaintiffs' information was accomplished only through an authorized exchange of information with Plaintiffs' browsers. SAC ¶¶ 23-29, 37-44; *supra* at pp. 4-6; *see* Google's First Motion to Dismiss at 6-10 (Dkt. No. 44-1). And as noted, the only information Google obtained by placing cookies on Plaintiffs' browsers were the values of Google's own cookies, which it already knew because it created those values. *See* SAC ¶¶ 43, 45. Plaintiffs come nowhere close to alleging a subsection (c) violation.

---

[7] While *Chrisman* interpreted the CCL, the CROA defines the term "access" similarly and should therefore be interpreted similarly. *Compare* N.J.S.A. § 2A:38A-1(a) ("'Access' means to instruct, communicate with, store data in, retrieve data from, or otherwise make use of any resources of a computer, computer system, or computer network.") *with* Cal. Pen. Code § 502(b)(1) ("'Access' means to gain entry to, instruct, or communicate with the logical, arithmetical, or memory function resources of a computer, computer system, or computer network."); *see also Smith v. City of Jackson, Miss.*, 544 U.S. 228, 233 (2005).

### c.   CROA Subsection 3(d)

Subsection (d) is inapplicable to Plaintiffs' allegations because it only applies to "financial instrument[s]."

### d.   CROA Subsection 3(e)

Plaintiffs' subsection (e) claim fails because, as discussed above, they do not plead facts that Google *hacked* their computers.  Plaintiffs also offer no facts to suggest that Google acted "recklessly" in any way; indeed Plaintiffs' own allegations demonstrate that Google engaged in routine Internet communications and not in any conduct that can be deemed reckless.

Plaintiffs' failure to plead conduct violating any subsection of the CROA is yet another basis to dismiss the claim with prejudice.

### 2.   Google Did Not Purposefully or Knowingly Harm Plaintiffs

"[E]ach subsection [of the CROA] requires that the conduct by [the defendant] be purposeful or knowing."  *Fairway Dodge, LLC v. Decker Dodge, Inc.*, 191 N.J. 460, 469 (2007) (quotations omitted).  Accordingly, consistent with similar requirements under the CFAA,[8] Plaintiffs must plead facts showing that Google purposefully or knowingly damaged Plaintiffs in business or property.  Merely alleging that Google engaged in purposeful conduct is insufficient.  Here, Plaintiffs cannot satisfy this element because—as the Court previously noted—

---

[8] *Kalow & Springnut, LLP v. Commence Corp.*, No. 07-3442, 2008 U.S. Dist. LEXIS 48036, at *9 (D.N.J. June 23, 2008) (dismissing CFAA claim where plaintiff failed to allege "that [defendant] intended to cause *harm*, i.e. actual intent"); *Oracle Corp. v. SAP AG*, 734 F. Supp. 2d 956, 964 (N.D. Cal. 2010) ("plaintiffs must allege and prove that [the defendant] specifically 'intended' to 'cause damage'"); *Devon Energy Corp. v. Westacott*, No. 09-1689, 2011 U.S. Dist. LEXIS 30786, at *32-34 (S.D. Tex. Mar. 24, 2011) (collecting cases).

Plaintiffs' allegations confirm that Google's purpose in placing cookies on their computers was to deliver more relevant ads.  SAC ¶¶ 33, 35-37, 45; *see* Order at 3-4 ("The information is used by Google . . . 'to sell targeted advertising' based upon Plaintiffs' 'individualized web usage . . . .'"); *id.* at 27-28; *DoubleClick*, 154 F. Supp. 2d at 519.  Plaintiffs' failure to allege that Google's purpose was to injure Plaintiffs' business or property provides yet another reason that the CROA claim should be dismissed with prejudice.

## II.   THE INTRUSION CLAIM (COUNT III) SHOULD BE DISMISSED WITH PREJUDICE

Plaintiffs' intrusion claim fails because the SAC does not plausibly allege that Google (1) intentionally (2) invaded a legally private matter (3) in a manner "highly offensive to a reasonable person."  *Hennessey v. Coastal Eagle Point Oil Co.*, 129 N.J. 81, 94-95 (1992) (quoting Restatement (Second) of Torts § 652B (1977)).

### A.   Google Lacked the Requisite Intent

Plaintiffs do not allege Google had the intent required to commit an unlawful intrusion.  "[A]n actor commits an intentional intrusion only if he believes, or is substantially certain, that he lacks the necessary legal or personal permission to commit the intrusive act."  *O'Donnell v. United States*, 891 F.2d 1079, 1083 (3d Cir. 1989)[9]; *Jevic v. Coca Cola Bottling Co.*, No. 89-443, 1990 U.S. Dist. LEXIS

---

[9] While *O'Donnell* applies Pennsylvania law, both Pennsylvania and New Jersey courts have adopted the tort of intrusion as set forth in § 652B of the Restatement (Second) of Torts.  *See O'Donnell*, 891 F.2d at 1082-83; *Burger v. Blair Med. Assocs.*, 964 A.2d 374, 379 (Pa. 2009); *Jevic*, 1990 U.S. Dist. LEXIS 8821, at *23-24; *G.D. v. Kenny*, 15 A.3d 300, 309 (N.J. 2011).  As a result, "Pennsylvania common law [on the tort of intrusion] is virtually identical to New
(continued...)

8821, at *23-24 (D.N.J. June 6, 1990) (following *O'Donnell*); *accord Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1221 (10th Cir. 2003).

Plaintiffs do not allege any facts that Google knew it was violating the law by placing cookies on their browsers (and it was not). Google's intent "has plainly not been to perpetuate torts" but to "make money by providing a valued service." *DoubleClick*, 154 F. Supp. 2d at 519; *see also* Order at 27 ("[t]he instant lawsuit is . . . not [about] an illegal purpose"). Even Plaintiffs concede that Google acted "for commercial purposes." SAC ¶ 2; *see* Order at 3-4 ("The information is used by Google . . . 'to sell targeted advertising' based upon Plaintiffs' 'individualized web usage . . . .'"); *id.* at 27-28 (noting the absence of any facts indicating wrongful intent). For this reason alone, Plaintiffs' intrusion claim should be dismissed with prejudice.

### B.    The Alleged Intrusion Was Not Highly Offensive

Plaintiffs also fail to establish that the alleged intrusion was highly offensive to a reasonable person. In its Order on Google's first motion to dismiss, the Court agreed that Google's alleged receipt of information from Plaintiffs' browsers, and its use of cookies to display more relevant ads, does not satisfy the high bar necessary to find an intrusion upon seclusion. *See* Order at 37 (finding that original complaint "does not explain factually how Defendants' collection and monetization of online information would be offensive to the reasonable person, let alone exceedingly so"); *see also Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025-26 (N.D. Cal. 2012) (disclosure of browsing history not highly offensive); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040,  1063 (N.D. Cal. 2012)

---

(...continued from previous page)
Jersey common law." *Rush v. Portfolio Recovery Assocs. LLC*, 977 F. Supp. 2d 414, 433 n.23 (D.N.J. 2013).

(finding transfer of plaintiffs' geolocation information, personal data and unique device identifier number was not an egregious breach of social norms); *In re Google, Inc. Privacy Policy Litig.*, No. 5:12-cv-01382, 2014 U.S. Dist. LEXIS 100245, at *43-44 (N.D. Cal. July 21, 2014) (finding alleged commingling and disclosure of PII is not highly offensive); *Yuncker v. Pandora Media, Inc.*, No. 11-cv-03113, 2013 U.S. Dist. LEXIS 42691, at *44-45 (N.D. Cal. Mar. 26, 2013) (disclosing PII not highly offensive); *Cookie Litig.*, 988 F. Supp. 2d at 449-50 (neither "transfer of inputted information" nor "Google's subsequent association [of this data] to provide targeted advertising" constitutes a "sufficiently serious invasion of privacy").

The additional allegations in the SAC do not alter this conclusion.

*First*, Plaintiffs argue that Google's conduct is highly offensive because it supposedly violates the Video Privacy Protection Act ("VPPA"), the Wiretap Act, the Pen Register Act, the Computer Fraud and Abuse Act ("CFAA"), and "corresponding computer crime statutes of all 50 states" in some unexplained way. SAC ¶¶ 160-61. Because Plaintiffs do not even attempt to plead violations of these statutes, the Court must "disregard [these] 'naked assertions.'" *Santiago*, 629 F.3d at 131. Indeed, these boilerplate assertions have already been refuted given the Court's previous dismissal of the VPPA and Wiretap Act claims with prejudice (Order at 39), and Plaintiffs' concession that they could not plead a CFAA claim. Dkt. No. 71. In any event, merely alleging that conduct violates state or federal law is insufficient to show that it is highly offensive. *E.g.*, *Rush*, 977 F. Supp. 2d at 433-36 & n.23 (plaintiffs failed to establish that the conduct was highly offensive even though it violated the Fair Debt Collection Practices Act); *Tamayo v. Am. Coradious Int'l, LLC*, No. 11-cv-6549, 2011 U.S. Dist. LEXIS 149124, at *11-12 (D.N.J. Dec. 28, 2011) (finding plaintiff's "bald asser-

tions" that defendant violated Fair Debt Collection Practices Act not sufficient to show that conduct was highly offensive).

*Second*, Plaintiffs argue, again without explanation, that "Google violated the Terms of Use of both the Internet Service Providers and the web browsers employed by the Plaintiffs."  SAC ¶¶ 65, 66, 163.  But the provisions of the agreements that Plaintiffs reference govern the conduct of *consumers* using the services, not the conduct of *service providers* providing those services.[10]  Those provisions have nothing whatsoever to do with an advertiser's use of cookies to provide benefits to web users.  They certainly do not provide some yardstick against which that conduct could ever be judged highly or exceedingly offensive.[11]

*Third*, without any supporting fact allegations, Plaintiffs vaguely claim that Google's conduct was highly offensive because Google "violated the online advertising industry [sic] and their own standards for respecting the personal information of children."  SAC ¶ 167.  Google has no idea what Plaintiffs are referring to, and Plaintiffs do not say.  The Court must "disregard" these "'naked assertions.'"  *Santiago*, 629 F.32d at 131.  But even if these allegations were plausible, merely alleging that conduct violates such standards is insufficient to demonstrate

---

[10] *See* SAC ¶ 65, 66 (referencing the privacy policies and terms of service of Internet service providers and web-browsers that prohibit "*users*" from engaging in "unlawful or unauthorized tracking of the communications of others . . .").

[11] To the extent Plaintiffs are suggesting that Google somehow breached its own obligations under any of these agreements, that would still not be sufficient to establish that its conduct was highly offensive.  *See In re Northwest Airlines Privacy Litig.*, No. 04-126, 2004 U.S. Dist. LEXIS 10580, at *13-18 (D. Minn. June 6, 2004) (disclosure of passenger information to government agency allegedly in violation of airline's privacy policy was not highly offensive).

that it is highly offensive.  *Cf. Rush*, 977 F. Supp. 2d at 433-36 & n.23 (alleged violation of federal law not highly offensive); *In re Northwest Airlines Privacy Litig.*, 2004 U.S. Dist. LEXIS 10580, at *13-18 (alleged violation of privacy policy not highly offensive).

*Fourth*, Plaintiffs advance the bare assertion that "Defendants' unauthorized tracking of the minor children Plaintiffs' communications on the Internet, including, as detailed above, communications on sensitive topics, such as divorce and health URLs, is highly offensive to a reasonable person."  SAC ¶ 162.  But Plaintiffs do not allege that Google tracked any of their "sensitive" information when they visited any of Viacom's Nickelodeon websites.  Instead, they speculate that "communications on sensitive topics" could in theory be tracked if a hypothetical minor were to visit a website called WikiHow (at http://www.wikihow.com/Deal-With-Your-Parents'-Divorce) as part of a search for information about how to deal with a divorce.  *See id.* ¶ 74 ("A Plaintiff minor child . . . *may* enter that search term." (emphasis added)).

As an initial matter, whatever might occur with respect to the WikiHow website is irrelevant. Plaintiffs do not allege that they actually visited the WikiHow website, and even if they had, "this lawsuit . . . focuses exclusively on . . . Viacom websites and the Defendants' data collection activities in regards to those sites."  Order at 15.  Moreover, Plaintiffs provide nothing to support their argument that the hypothetical receipt of a URL – unconnected to a specific user – would ever be highly offensive.  These allegations are therefore properly disregarded.  *See Twombly*, 550 U.S. at 555; Order at 26 n.12 (finding Plaintiffs' allegations about "'other websites on which Google places advertisements'" "conclusory" and "made with no factual support").

*Fifth*, Plaintiffs argue that Google's conduct was highly offensive because cookies were used "millions of times."  SAC ¶ 165.  Even taking these allegations

as true, the frequency of commonplace commercial conduct does not, without more, transform it into something highly offensive.  To the contrary, the fact that cookies are frequently used on the Internet only confirms that their use constitutes "'routine commercial behavior'" not an "egregious breach of . . . social norms," *Low*, 900 F. Supp. 2d at 1025; *see generally Pharmatrak*, 329 F.3d at 14 ("[c]ookies are widely used on the internet by reputable websites to promote convenience and customization"); *Chance v. Avenue A, Inc.*, 165 F. Supp. 2d 1153 1156 (W.D. Wash. 2001) ("[m]any web sites use cookie technology").

*Finally*, Plaintiffs cite the results of apparent consumer surveys.  But Plaintiffs allege no facts regarding the methodology by which the surveys were conducted or any other information to support their reliability. *Cf. Brokerage Concepts v. United States Healthcare*, 140 F.3d 494, 516 n.14 (3d Cir. 1998) (surveys must satisfy generally accepted survey principles, including adequate sample size and representativeness, knowledgeable surveyors, accurate data gathering and reporting, and sound methodology and techniques).  They should therefore be disregarded as conclusory and implausible. *Twombly*, 550 U.S. at 555.

Even if considered, the surveys do not support Plaintiffs' claim.  Many of the survey questions ask about completely irrelevant conduct.  *See* SAC ¶ 164(d) (asking about "tracking software"); *id.* ¶ 164(e) (asking about whether a hypothetical law "is a good idea"); *id.* ¶ 164(f) (alleging that "[p]arents  in the survey were more protective of children's privacy that non-parents"); *id.* ¶ 164(g) (asking about "tracking your behavior across the web"); *id.* ¶ 164(h) (asking "about the *government* or private companies collecting digital information from your computer or *phone*" (emphasis added)).  None of the surveys purports to measure whether conduct is *highly offensive*.  Instead, the surveys ask whether particular conduct is "wrong," SAC ¶¶ 164(a); is "okay," *id.* ¶ 164(b), (c), (i); "should" require parental consent, *id.* ¶ 164(d); is "a good idea," *id.* ¶ 164(e); or causes "con-

22

cern[]," *id.* ¶ 164(g), (h). That is not the proper standard. Conduct must be "outrageous, rather than annoying or upsetting" to support an intrusion upon seclusion claim. *Rush*, 977 F. Supp. 2d at 435.

All of the survey questions are inapposite for the additional reason that they fail to consider the benefit of cookies. "[D]etermining whether an alleged invasion of privacy is substantial and highly offensive to the reasonable person necessitates the use of a balancing test*.*" *Borse v. Piece Goods Shop, Inc.*, 963 F.2d 611, 627 (3d Cir. 1992). While consumers may dislike certain commercial conduct in the abstract, it is not highly offensive if it is socially useful. *Poltrock v. NJ Auto. Accounts Mgmt. Co.*, No. 3:08-1999, 2008 U.S. Dist. LEXIS 103351, at *20 (D.N.J. Dec. 17, 2008); *Vega v. United Recovery Sys., L.P.*, No. 11-5995, 2012 U.S. Dist. LEXIS 16801, at *15  (D.N.J. Feb. 9, 2012) (Chesler, J.) (characterizing as "frivolous" allegation that debt collection call is "highly offensive"). Because the surveys alleged by Plaintiffs do not consider the social utility of cookies, they cannot possibly measure whether their use is "highly offensive."

In sum, Plaintiffs' new allegations fail to plausibly show that Google's alleged conduct is highly offensive to a reasonable person, and therefore Plaintiffs' intrusion claim should be dismissed with prejudice.

### C.    Google Did Not Invade a Legally Private Matter

Plaintiffs also fail to allege that Google invaded a private matter. While the Court recognized that "'information that is identifiable to an individual'" (Order at 36 (quoting *State v. Reid*, 914 A.2d 310, 314 (N.J. Sup. Ct. App. Div. 2007))) might be private under certain circumstances, Plaintiffs do not identify any such information collected by Google. Indeed, this Court previously rejected Plaintiffs' allegations that Viacom and Google were able to "identify specific users," because the allegations were "entirely conclusory." Order at 4 n.3

Plaintiffs' new allegations do not alter the analysis.  Plaintiffs now allege without support that Google collects personally identifiable information in connection with registering users for certain Google services (*e.g.*, Gmail, Google Plus) and "connects" this information to "persistent cookie identifiers, IP addresses, and unique device identifiers."  SAC ¶¶ 80-84, 87, 88, 91-94.  But the allegation is implausible, since it directly conflicts with the Google privacy policy quoted by Plaintiffs.  *See id.* ¶ 85.  Moreover, none of these allegations helps Plaintiffs because Plaintiffs do not allege that they are registered Google account holders. *See* SAC ¶¶ 9-14 (alleging only that Plaintiffs are registered Nick.com account users).

Even if Plaintiffs were registered Google account holders, Plaintiffs' own allegations confirm that to register for a Google account they would have voluntarily shared their personal information with Google as part of the registration process, thereby undermining any intrusion claim.[12]  *See McNemar v. Disney Store, Inc.*, 91 F.3d 610, 622 (3d Cir. 1996) (no intrusion where plaintiff voluntarily shared HIV status with employer); *Poltrock*, 2008 U.S. Dist. LEXIS 103351, at *18-19 (finding that "voluntar[y] disclos[ure]" of information waived plaintiff's privacy interest); *Bradley v. Atl. City Bd. of Educ.*, 736 F. Supp. 2d 891, 899 (D.N.J. 2010) (finding defendant had not "intruded into Plaintiff's private conversation because he was a party to the conversation").

---

[12] *See* SAC ¶ 81 ("Use of Gmail and the social network Google Plus requires registration, a process through which Google obtains a user's first and last name, hometown, email address, and other personal information about each user."); *id.* ¶ 82 ("Other Google services collect users' first and last names, hometowns, email addresses, and other personal information when the user signs up as a member for those services.").

24

Likewise, any information generated and sent by Plaintiffs' browsers in GET requests—including the URL of the websites they visit and the other information they argue is "personal information"—is voluntarily sent to Google.  *See* SAC ¶¶ 25-29, 37-43.  As Plaintiffs concede, their browsers send this information to Google *whether or not a DoubleClick ID cookie is present on their browsers. Id.* ¶¶ 23-29, 37-43, 73; Pls. Opp. to Defs. Mots. to Dismiss at 34, 43; *see also Cookie Litig.*, 988 F. Supp. 2d at 443 ("plaintiffs' browsers voluntarily sent to Google the information inputted by plaintiffs [as part of the GET command], regardless of whether plaintiffs' browsers had any Google cookies set"); *id.* at 444 ("[P]laintiffs' browsers would send a URL [to Google as part of the GET command] regardless of whether a third party cookie was set.").  Because Google was a party to these communication—regardless of whether a cookie was used— Google did not intrude into a legally private matter.  The only additional information Google received due to its use of cookies was the value of its cookies, which were previously known to Google.  *See supra* pp. 4-5.  Because a defendant cannot invade a legally private matter when information is already known to it, Plaintiffs cannot state an intrusion claim based on Google's receipt of this information.  *See Poltrock*, 2008 U.S. Dist. LEXIS 103351, at *12-21 (dismissing intrusion claim arising from information already known to defendant).  Plaintiffs' failure to allege intrusion into a legally private matter provides a third basis upon which this Court should dismiss Plaintiffs' intrusion claim with prejudice.

**CONCLUSION**

For the foregoing reasons, Google respectfully requests that the SAC be dismissed.  And because Plaintiffs' SAC demonstrates that further amendment would be futile, this Court should dismiss these claims with prejudice.

Dated:  October 14, 2014

Respectfully submitted,

SILLS CUMMIS & GROSS P.C.
One Riverfront Plaza
Newark, New Jersey 07102-5400
Telephone:  (973) 643-7000

By: */s/ Jeffrey J. Greenbaum*
Jeffrey J. Greenbaum
jgreenbaum@sillscummis.com

Colleen Bal
(admitted *pro hac vice*)
Michael H. Rubin
(admitted *pro hac vice*)
WILSON SONSINI GOODRICH
   & ROSATI, P.C.
One Market Plaza
Spear Tower, Suite 3300
San Francisco, CA 94105-1126
Telephone:  (415) 947-2000
cbal@wsgr.com
mrubin@wsgr.com

*Attorneys for Defendant Google Inc.*