Stephen M. Orlofsky
BLANK ROME LLP
301 Carnegie Center, 3rd Floor
Princeton, NJ 08540
(609) 750-7700

Bruce P. Keller
Jeremy Feigelson
Kristin Lieske Bryan
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, NY 10022
(212) 909-6000

*Attorneys for Defendant Viacom Inc.*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE:  NICKELODEON CONSUMER PRIVACY LITIGATION | MDL No. 2443 |
| | Docket No. 2:12-cv-07829 (SRC)(CLW) |
| This Document Relates To: ALL CASES | ECF Case |
| | **REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT VIACOM INC.'S MOTION TO DISMISS** |
| | Oral Argument Requested |

## **TABLE OF CONTENTS**

ARGUMENT ..................................................................................................1

I.    Plaintiffs Still Have Not Pleaded A VPPA Claim............................................1

II.   Plaintiffs Still Have Not Pleaded A State-Law Claim. ...................................7

      A.    New Jersey Computer Related Offenses Act......................................7

      B.    Intrusion Upon Seclusion. .................................................................11

CONCLUSION .............................................................................................14

# TABLE OF AUTHORITIES

## Cases

*Ashcroft v. Iqbal*,
   129 S.Ct. 1937 (2009) ........................................................................10

*Boring v. Google Inc.*,
   362 Fed. App'x 273 (3d Cir. 2010) ............................................. 11, 13

*Clapper v. Amnesty Int'l USA*,
   133 S.Ct. 1138 (2013) ..........................................................................6

*Del Mastro v. Grimado*,
   No. BER-C-388-03E, 2005 WL 2002355 (N.J. Super. Aug. 19, 2005) ..............11

*Eichenberger v. ESPN, Inc.*,
   No. 2:14-cv-00463-TSZ (W.D. Wash. Nov. 24, 2014) (minute order dismissing
   Amended Complaint) ...........................................................................4

*Ellis v. Cartoon Network, Inc.*,
   No. 1:14-cv-484, 2014 WL 5023535 (N.D. Ga. Oct. 8, 2014) ........................4, 5

*In re Hulu Privacy Litig.*,
   No. C 11-03764, 2014 WL 1724344 (N.D. Cal. Apr. 28, 2014) ................. 2, 3, 4

*In re Nickelodeon*,
   MDL No. 2443, 2014 WL 3012873 (D.N.J. July 2, 2014) ........................ *passim*

*O'Donnell v. United States*,
   891 F.2d 1079 (3d Cir. 1989) ..............................................................13

*P.C. of Yonkers, Inc. v. Celebrations! The Party and Seasonal Superstore, L.L.C.*,
   No. 04-4554, 2007 WL 708978 (D.N.J. Mar. 5, 2007).........................................10

*Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.*,
   836 F.2d 173 (3d Cir. 1988) ...............................................................10

*Phillips v. Cnty. of Allegheny*,
   515 F.3d 224 (3d Cir. 2008) ...............................................................14

*Syncsort, Inc. v. Sequential Software, Inc.*,
   50 F. Supp. 2d 318 (D.N.J. 1999)........................................................................10

*Tamayo v. Am. Coradious Int'l, LLC*,
   No. 11-cv-6549, 2011 U.S. Dist. LEXIS 149124 (D.N.J. Dec. 28, 2011)...........12

*Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc.*,
   140 F.3d 478 (3d Cir. 1998) ...............................................................................13

*White v. White*,
   344 N.J. Super. 211 (N.J. Super. Ct. 2001) ........................................................13

**Statutes**

28 U.S.C. § 1367(c)(1) .............................................................................................13

N.J. Stat. Ann. § 2A:38A-3 .......................................................................................7

Viacom Inc. ("Viacom") submits this reply memorandum in further support of its motion to dismiss.

This court properly dismissed Plaintiffs' claims in their entirety for the reasons set forth in detail in *In re Nickelodeon*, MDL No. 2443, 2014 WL 3012873 (D.N.J. July 2, 2014).  Plaintiffs have not remedied the fatal defects in the complaint this Court dismissed, and their opposition confirms they cannot do so.  Instead, Plaintiffs again deploy airy rhetoric and policy arguments where hard factual allegations are needed.  They also make a wholly ineffective attempt to recast the unjust enrichment claim – already dismissed with prejudice – under the rubric of the New Jersey Computer Related Offenses Act.

Simply put, Plaintiffs have had their second chance.  Their remaining claims should be dismissed, this time with prejudice.

## ARGUMENT

### I.    Plaintiffs Still Have Not Pleaded A VPPA Claim.

Viacom's opening brief explained why the Second Complaint falls far short of alleging the disclosure by Viacom of information that "without more, itself link[s] an actual person to actual video materials."  *In re Nickelodeon*, 2014 WL 3012873, at *10.  *See* Viacom Opening Br. at 10–11.  Plaintiffs have not alleged that Viacom even knew Plaintiffs' names, their addresses, or any other information "'akin' to a name," *In re Nickelodeon*, 2014 WL 3012873, at *10 (quoting *In re*

*Hulu Privacy Litig.*, No. C 11-03764, 2014 WL 1724344, at *14 (N.D. Cal. Apr. 28, 2014)), let alone improperly disclosed such information.

Plaintiffs' opposition confirms that the Second Complaint is lacking in that regard. It simply repeats the purely speculative, compound and abstract assertion that: (*i*) through the DoubleClick cookie, Viacom disclosed an anonymous user ID – a string of numbers – to Google; (*ii*) which Google, in turn, supposedly was able to link to personally identifiable information ("PII"); (*iii*) that Google otherwise collects through services like Gmail or Google Plus. Plaintiffs assert only that "Google is able to link the information received from Viacom to specific individuals" – but not to the Plaintiffs – "by utilizing the information already in Google's possession" – but not any information disclosed to Google by Viacom. Pl. Br. at 11.

Even taken at face value, that does not state a claim under VPPA. It is not enough to allege that Viacom disclosed an anonymous number string like the DoubleClick ID. That is confirmed not only by this Court's prior decision, but also by the summary judgment decision in *Hulu*. In that case, Hulu was alleged to have sent users' video viewing histories to comScore, via an anonymous user ID (the "comScore ID"), and to Facebook, via a different anonymous user ID (the "Facebook ID"). 2014 WL 1724344, at *12–13. In both instances Hulu disclosed "a string of letters and numbers," the disclosure of which alone could not support a

2

VPPA violation. *Id.* at *14. Rather, the *Hulu* court held, an anonymous string of letters and numbers could support a VPPA claim if – and only if – the string linked directly to "an identified person" and thus amounted to PII. *Id.*

The comScore ID could be linked to everything comScore collected about an individual's web browsing – "substantial tracking that reveals a lot of information about a person," but not the person's actual identity. *Id.* at *12. Because "a lot" of information is not the same as PII, the comScore ID could not support a VPPA violation: Its disclosure did not "necessarily reveal[] an identified person." *Id.* The Facebook ID, by contrast, "is information that identifies the Hulu user's actual identity on Facebook." *Id.* at *13. The *Hulu* court held that this was the digital-age equivalent of a name and thus could support a VPPA violation. *Id.* at *14.

Plaintiffs do not and cannot allege any facts that would make the DoubleClick ID akin to the Facebook ID in *Hulu*. On the contrary, in the Second Complaint, Plaintiffs affirmatively allege that the DoubleClick ID – like the comScore ID – is linked only to websites a user visited on which Google served ads. Second Compl. ¶ 78. Plaintiffs nowhere allege that they disclosed their actual names or other PII to Google, unlike the *Hulu* plaintiffs who disclosed their PII to Facebook. Nor do Plaintiffs allege that Viacom ever knew or disclosed their identities. Without any allegation of fact that their identities were known to either

3

Defendant, Plaintiffs do not and cannot state a VPPA claim. *In re Nickelodeon*,

2014 WL 3012873, at *10; *In re Hulu*, 2014 WL 1724344, at *12.

Plaintiffs' allegations are akin to those recently dismissed for failure to state

a claim under VPPA by the court in *Eichenberger v. ESPN, Inc.*, No. 2:14-cv-

00463-TSZ (W.D. Wash. Nov. 24, 2014) (minute order dismissing Amended

Complaint) (attached in Appendix). The plaintiff was a user of the WatchESPN

"app," and alleged that ESPN disclosed his PII and video viewing history to a

third-party analytics company. *Id*. at 2. The court noted that although, in theory,

> ESPN could be found liable under the VPPA for disclosing
> both "a unique identifier and a correlated look-up table" by
> which Plaintiff could be identified as a particular person who
> watched particular videos, Plaintiff does not allege sufficient
> facts to support his theory that Adobe already has a "look-up
> table." [citing *In re Hulu*, 2014 WL 1724344, at *11]. Even if
> Adobe does "possess a wealth of information" about
> individual consumers, it is speculative to state that it can, and does,
> identify specific persons as having watched or requested
> specific video materials from the WatchESPN application.

*Id*. In this case, too, Plaintiffs rely in vain on "speculative" assertions. They have

failed to allege **facts** to support their theory that Viacom disclosed to Google

information by which Plaintiffs could be identified as having watched particular

videos, or that Google was able to cross-reference any information that Viacom

provided with any data already in Google's possession.

*Ellis v. Cartoon Network, Inc.*, No. 1:14-cv-484, 2014 WL 5023535 (N.D.

Ga. Oct. 8, 2014) also plainly supports dismissal, and Plaintiffs' argument to

characterize it otherwise (Pl. Br. 10-11) cannot change the obvious.  In *Ellis*, the sum total of the disclosure was "a randomly generated number that is unique to each user and device" – i.e., an anonymous user ID no different than the DoubleClick ID that is at issue here.  *Id.* at *3.  Just like the DoubleClick ID, that disclosure "[w]ithout more . . . does not identify a specific person," and is not actionable under VPPA.  *Id.*

Plaintiffs' continued reliance on statutory and regulatory regimes unrelated to VPPA (Pl. Br. 8–9) remains unavailing.  Congress could have amended VPPA to bring its definition of PII into line with other legal definitions of that term.  It did not.  These other regimes are, as before, "irrelevant to this Court's VPPA analysis."  *In re Nickelodeon*, 2014 WL 3012873, at *12.

Plaintiffs attempt to cure the fatal defects in their allegations with rhetoric and policy arguments about Google's purportedly all-knowing databases but, even then, they never allege that ***they*** have used any of the Google services in question.  For that reason, the Second Complaint also fails to allege that any of the information Google supposedly "already ha[d] in its possession" is about the Plaintiffs.  Second Compl. ¶ 77.  That underscores just how hypothetical and abstract the Second Complaint remains.  Even if one speculates that Google possibly could identify "users" of its services, Plaintiffs never allege that they themselves are among those users.  *See id.* ¶¶ 78–99.

This failure to allege that the Plaintiffs use the services in question (which, by design, are limited to registrants older than the plaintiff class), was highlighted in Viacom's opening brief (at p. 11–12).  Plaintiffs never address this failure anywhere in their opposition.  Their argument that VPPA is violated by Google's alleged ability to "cross-reference" the DoubleClick ID with "other information in its databases to discover the identities of Nick.com users" necessarily fails.  Pl. Br. at 12.

For the same reasons previously discussed, Plaintiffs also lack standing.  *See* Viacom Opening Br. at 17 n.5; *Clapper v. Amnesty Int'l USA*, 133 S.Ct. 1138, 1148–49 (2013) (individuals who could only speculate that they were the targets of government eavesdropping did not have standing because they "merely speculate[d] and ma[d]e assumptions about whether their communications with their foreign contacts will be acquired").  Plaintiffs offer nothing more than speculation that (*i*) Google has information about them, since they do not use Google services, and (*ii*) Google could identify them based on the DoubleClick cookie alone.  *See id.* at 1150 ("We decline to abandon our usual reluctance to endorse standing theories that rest on speculation[.]").

Plaintiffs' VPPA claim against Viacom should be dismissed with prejudice.

## II.   Plaintiffs Still Have Not Pleaded A State-Law Claim.

### A.   New Jersey Computer Related Offenses Act.

A claim under the NJCROA requires facts demonstrating Plaintiffs were damaged in their "business or property" as a result of Viacom's conduct.  N.J. Stat. Ann. § 2A:38A-3 (private right of action for "[a] person or enterprise damaged in business or property").  The NJCROA claim should be dismissed again – this time with prejudice – because Plaintiffs again have not alleged any such facts.

The Second Complaint continues to rely upon the same theory of business or property damage this Court already has rejected, *i.e.*, that "Defendants' use of cookies permitted the 'acquisition and use of Plaintiffs' personal information for marketing purposes,' which Plaintiffs equate to 'property' damage."  *In re Nickelodeon*, 2014 WL 3012873, at *18.  The Second Complaint continues to lack allegations that Plaintiffs suffered "plausible damage to 'business or property'" because, as this Court held previously, "just because Defendants can monetize Plaintiffs' internet usage does not mean Plaintiffs can do so as well."  *Id*.

The argument  that the Second Complaint advances a "new theory" of damage to business or property under the NJCROA that "ties the NJCROA to unjust enrichment in a quasi-contractual setting" (Pl. Br. at 14) lacks any merit. The sole new allegation relating to Plaintiffs' NJCROA claim is that

7

> [t]hrough conversion and without consent, Defendants harvested Plaintiffs' personal information for their unjust enrichment and to the financial detriment of Plaintiffs and Class Members.  Had Plaintiffs, Class Members, and/or their parents and/or guardians known that Defendants were converting Plaintiffs' personal information for financial gain, Plaintiffs, Class Members, and/or their parents and/or guardians would have at least expected remuneration for their personal information at the time it was conveyed.

Second Compl. ¶ 153; *see also* Pl. Br. at 15.  This attempt to use unjust enrichment as the NJCROA predicate, however, is foreclosed by the Court's previous ruling dismissing the unjust enrichment claim with prejudice, *In re Nickelodeon*, 2014 WL 3012873, at *19–20, because, as Plaintiffs themselves note, "New Jersey does not recognize [unjust enrichment] as an independent action in tort."  Pl. Br. at 15. Plaintiffs nevertheless attempt to bootstrap their way into a viable NJCROA claim by contending that they "present unjust enrichment not as an independent action in tort, but as a measure of damages under the NJCROA in a quasi-contractual sense." *Id*.

This is a distinction without a difference.  This Court's July 2, 2014 opinion clearly states that "[t]his is not a quasi-contract case" and "[t]he Court is unaware of any legal authority that would find the relationship described in the [complaint] to be unjust in the contractual or quasi-contractual sense, and Plaintiffs do not suggest a cogent reason for the Court to find as such here." *In re Nickelodeon*, 2014 WL 3012873, at *19.

8

In that regard, Plaintiffs misconstrue Viacom's argument that they must identify specific materials taken from their computer to state a claim under NJCROA.  This is not to say Plaintiffs must plead filenames, but rather to point out that the information on which Plaintiffs attempt to rely must have resided on their computers to be actionable under NJCROA.  That is not the case here.

Every single piece of data Plaintiffs allege Viacom possessed (Plaintiffs' gender, birthdate, IP address, browser settings, and video viewing histories) was, by Plaintiffs' own account, not taken by Viacom from their computers but ***sent to Viacom*** by Plaintiffs themselves, either directly or via their web browsers.  *See* Second Compl. ¶¶ 103, 107.  None of this information resided on Plaintiffs' computers, and the portions of the Second Complaint Plaintiffs identify in their opposition (*id.* ¶¶ 106–07) do not allege that information ***on Plaintiffs' computers*** was accessed or altered.  NJCROA simply does not make it unlawful to receive transmitted information.  That, however, is all Plaintiffs allege.

The NJCROA claim fails for the additional, independent reason that the Second Complaint alleges no non-conclusory facts indicating that Viacom acted with wrongful purpose or knowledge – an argument to which Plaintiffs do not respond.  The Second Complaint alleges only in a summary fashion, without reference to facts, that Viacom's conduct was done "purposefully, knowingly and/or recklessly."  Viacom Opening Br. at 21 n.6 (citing Second Compl. ¶ 152).

9

These are legal conclusions, not well-pled allegations of fact, and thus are appropriately disregarded by the Court.  *See Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

Plaintiffs argue in vain that purpose or knowledge may be imputed to Viacom because Viacom's "software cookies performed exactly as they had been intentionally and purposefully programmed to do."  Pl. Br. at 18.  It would be remarkable if the routine use of cookies could satisfy the purpose and knowledge element of a computer intrusion statute (*cf. P.C. of Yonkers, Inc. v. Celebrations! The Party and Seasonal Superstore, L.L.C.*, No. 04-4554, 2007 WL 708978, at *8 (D.N.J. Mar. 5, 2007) (finding purpose or knowledge element satisfied only in the context of a scheme to misuse a former employer's confidential information)), and in any event, the Second Complaint contains no allegations supporting Viacom's alleged purpose or knowledge.  As the Third Circuit has noted, "[i]t is one thing to set forth theories in a brief; it is quite another to make proper allegations in a complaint."  *Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988).  Plaintiffs may not expand upon the allegations contained in the Second Complaint in their briefing.  *See Syncsort, Inc. v. Sequential Software, Inc.*, 50 F. Supp. 2d 318, 333 (D.N.J. 1999) ("The argument offered by Sequential in the Opposition Brief . . . does not remedy the deficiencies of the allegations in the

Antitrust Counterclaim.").  Plaintiffs' mistaken reliance on Viacom's statement that cookies are "well known features of the internet," Pl. Br. at 19, does nothing to change this.

For these reasons, Plaintiffs' NJCROA claim fails as a matter of law and should be dismissed with prejudice.

### B.    Intrusion Upon Seclusion.

Even "accepting [Plaintiffs'] allegations as true, their claim for intrusion upon seclusion fails as a matter of law, because the alleged conduct would not be highly offensive to a person of ordinary sensibilities." *Boring v. Google Inc.*, 362 Fed. App'x 273, 279 (3d Cir. 2010); *see* Viacom Opening Br. at 22–27.  Nothing in Plaintiffs' opposition disturbs this conclusion.  The opposition brief repeats language in the Second Complaint, but offers no precedential support.  *See* Pl. Br. at 30–33.  Plaintiffs' inability to identify any such support is not surprising – the conduct at issue is completely dissimilar from the types of circumstances that New Jersey courts have held to be highly offensive.  *See, e.g., Del Mastro v. Grimado*, No. BER-C-388-03E, 2005 WL 2002355, at *8 (N.J. Super. Aug. 19, 2005) (finding intrusion upon seclusion when woman's ex-boyfriend mailed sexually explicit pictures of her in Christmas cards to her family and friends); Viacom Opening Br. at 24.

Plaintiffs' policy arguments that Viacom's conduct was somehow highly offensive based upon the "special place of children in society," Pl. Br. at 30, conclusory allegations that Viacom and Google violated Internet Service Providers' Terms of Use or the standards of the Interactive Advertising Bureau, *id.* at 31, and irrelevant survey results, *id.* at 32–33, do nothing to counter the Second Complaint's lack of factual allegations that could satisfy the "highly offensive" standard as a matter of law.

Plaintiffs – citing decisions from Michigan, Texas, and New York state courts – also fail in their effort to argue that "[c]ivil and criminal statutes also evidence social norms of 'highly offensive' behavior supporting a claim for intrusion upon seclusion." Pl. Br. at 28–29. Such "bald assertions" that a defendant violated a statute do not establish that the conduct at issue was highly offensive. *Tamayo v. Am. Coradious Int'l, LLC*, No. 11-cv-6549, 2011 U.S. Dist. LEXIS 149124, at *11–12 (D.N.J. Dec. 28, 2011) (dismissing plaintiff's intrusion upon seclusion claim); Viacom Opening Br. at 24.

Nor are Plaintiffs able to save their intrusion upon seclusion claim by arguing that offensiveness "is a question of fact for the jury to decide." Pl. Br. at 26. This issue is appropriately decided by the Court as an issue of law, as in *Boring*, where the Court rejected the plaintiffs' contention that "the District Court erred in determining what would be highly offensive to a person of ordinary

12

sensibilities at the pleading stage . . . .  Courts do in fact, decide the 'highly offensive' issue as a matter of law at the pleading stage when appropriate." 362 Fed. App'x at 279.

The Second Complaint also does not allege facts sufficient to show that Viacom committed an intentional intrusion, or that Plaintiffs had a reasonable expectation of privacy in the information that Viacom purportedly disclosed to Google.  Viacom Opening Br. at 27–29.  Given that the use of cookies is so common, Viacom could not as a matter of law have "believe[d], or [been] substantially certain, that [it] lack[ed] the necessary legal or personal permission" to collect and use Plaintiffs' information.  *O'Donnell v. United States*, 891 F.2d 1079, 1083 (3d Cir. 1989).  Nor could it be said as a matter of law that there is such a strong "general social norm" protecting the anonymous information compiled by cookies that Plaintiffs' could have had a reasonable expectation of privacy.  *White v. White*, 344 N.J. Super. 211, 223 (N.J. Super. Ct. 2001).

For these reasons, Plaintiffs' intrusion upon seclusion claim fails as a matter of law and should be dismissed with prejudice.[1]

---

[1]   Plaintiffs' state-law claims are not only clearly baseless, but so novel and aggressive that this Court could appropriately decline to exercise supplemental jurisdiction.  *See* 28 U.S.C. § 1367(c)(1) (advising that the Federal courts may decline to exercise supplemental jurisdiction if "the claim raises a novel or complex issue of State law"); *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc.*, 140 F.3d 478, 487 (3d Cir. 1998) (upholding a district court's decision to decline to exercise supplemental jurisdiction over "a complex issue

## **CONCLUSION**

This Court should dismiss the Second Complaint in its entirety.  Because further amendment would be "inequitable [and] futile," *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008), the dismissal this time should be with prejudice as to all claims.

DATED:  December 5, 2014                    DEBEVOISE & PLIMPTON LLP

                                                    By:     /s/ Bruce P. Keller

Stephen M. Orlofsky                         Bruce P. Keller
BLANK ROME LLP                          Jeremy Feigelson
301 Carnegie Center, 3rd Floor          Kristin Lieske Bryan
Princeton, NJ 08540                         DEBEVOISE & PLIMPTON LLP
(609) 750-7700                               919 Third Avenue
                                                    New York, NY 10022
                                                    (212) 909-6000

                                                    *Attorneys for Defendant Viacom Inc.*

---

of state law which is better left to the New Jersey courts to determine"); Pl. Br. 14 (acknowledging that Plaintiffs rely on a new theory of state law).

**APPENDIX**

1

2

3

4  UNITED STATES DISTRICT COURT
   WESTERN DISTRICT OF WASHINGTON
5  AT SEATTLE

6  CHAD EICHENBERGER,
   individually and on behalf of all others
7  similarly situated,

8                     Plaintiff,              C14-463 TSZ

9           v.                                MINUTE ORDER

10  ESPN, INC., a Delaware corporation,

11                     Defendant.

12          The following Minute Order is made by direction of the Court, the Honorable
    Thomas S. Zilly, United States District Judge:
13

14  (1)     Defendant's Motion to Dismiss Plaintiff's First Amended Complaint, docket no.
    31, is GRANTED without prejudice, with leave to amend.  Plaintiff must amend within
    30 days from the date of this Minute Order.
15

16          In ruling on a motion to dismiss, the Court must assume the truth of the plaintiff's
    allegations and draw all reasonable inferences in the plaintiff's favor.  Usher v. City of
17  Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987).  "A claim has facial plausibility when
    the plaintiff pleads factual content that allows the court to draw the reasonable inference
18  that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662,
    678 (2009).  This "plausibility standard is not akin to a 'probability requirement,' but it
19  asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting
    Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007)).  Although a complaint
20  challenged by a Rule 12(b)(6) motion to dismiss need not provide detailed factual
    allegations, it must offer "more than labels and conclusions" and contain more than a
21  "formulaic recitation of the elements of a cause of action" in order "to raise a right to
    relief above the speculative level."  Twombly, 550 U.S. at 555.

22

23

MINUTE ORDER - 1

Plaintiff's factual allegations in this case are too speculative to meet the Iqbal/Twombly plausibility standard. Plaintiff has failed to allege sufficient facts that ESPN violated the Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA"), by transmitting his personally identifiable information ("PII") to a third party. Because the information allegedly disclosed is not PII (i.e., Plaintiff's Roku device serial number and his viewing records), Plaintiff's legal theory fails. Although ESPN could be found liable under the VPPA for disclosing both "a unique identifier and a correlated look-up table" by which Plaintiff could be identified as a particular person who watched particular videos, Plaintiff does not allege sufficient facts to support his theory that Adobe already has a "look-up table." See In re Hulu Privacy Litig., No. C 11-03764 LB, 2014 WL 1724344, at *11 (N.D. Cal. Apr. 28, 2014). Even if Adobe does "possess a wealth of information" about individual consumers, it is speculative to state that it can, and does, identify specific persons as having watched or requested specific video materials from the WatchESPN application.

When the Court dismisses the complaint or portions thereof, it must consider whether to grant leave to amend. Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000). "Futility of amendment can, by itself, justify the denial of a motion for leave to amend." Gonzalez v. Planned Parenthood of Los Angeles, 759 F.3d 1112, 1116 (9th Cir. 2014), quoting Bonin v. Calderon, 59 F.3d 815, 845 (9th Cir. 1995). Even though Plaintiff's current theory fails as alleged, the Court is not convinced that further amendment would be futi

(2)     The Clerk is directed to send a copy of this Minute Order to all counsel of record.

Dated this 24th day of November, 2014.

William M. McCool_____
Clerk

s/Claudia Hawney_____
Deputy Clerk

MINUTE ORDER - 2