UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **IN RE NICKELODEON CONSUMER PRIVACY LITIGATION**　：<br>：<br>：<br>：<br>：<br>This Document Relates to:　：<br>**All Actions**　：<br>： | Civil Action No. 12-7829 (SRC)(CLW)<br><br>Honorable Stanley R. Chesler<br><br>Motion Return Date:<br><br>November 17, 2014<br><br>(Oral Argument Requested)<br><br>*Document Electronically Filed* |

**GOOGLE INC.'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS THE SECOND CONSOLIDATED CLASS ACTION COMPLAINT UNDER FED. R. CIV. P. 12(B)(6)**

Jeffrey J. Greenbaum
**SILLS CUMMIS & GROSS P.C.**
One Riverfront Plaza
Newark, New Jersey 07102-5400
Telephone: (973) 643-7000
jgreenbaum@sillscummis.com

Colleen Bal
(admitted *pro hac vice*)
Michael H. Rubin
(admitted *pro hac vice*)
**WILSON SONSINI GOODRICH & ROSATI, P.C.**
One Market Plaza
Spear Tower, Suite 3300
San Francisco, CA 94105-1126
Telephone: (415) 947-2000
cbal@wsgr.com
mrubin@wsgr.com

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................ 1

ARGUMENT .............................................................................................................. 2

I. THE NEW JERSEY CROA CLAIM SHOULD BE DISMISSED ............... 2

    A. Plaintiffs Were Not Damaged in Business or Property ...................... 2

    B. Plaintiffs Do Not Meet the Remaining CROA Requirements ............ 5

        1. Plaintiffs Do Not Allege Prohibited Conduct ........................... 5

        2. Google Did Not Purposefully or Knowingly Harm Plaintiffs ................................................................................... 7

II. THE INTRUSION CLAIM SHOULD BE DISMISSED ............................... 8

    A. Google Did Not Invade a Legally Private Matter ............................... 9

    B. The Alleged Intrusion Was Not Highly Offensive ........................... 10

    C. Google Lacked the Requisite Intent ................................................... 13

CONCLUSION ........................................................................................................ 15

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Clayton v. Richards*,
   47 S.W.3d 149 (Tex. App. Tex. 2001) .......................................................... 12

*Dalley v. Dykema Gossett, P.L.L.C.*,
   788 N.W.2d 679 (Mich. Ct. App. 2010) ....................................................... 12

*Fairway Dodge, Inc. v. Decker Dodge, Inc.*,
   2006 N.J. Super. Unpub. LEXIS 1360 (App. Div. June 12, 2006),
   *aff'd*, 191 N.J. 460 (2007) .............................................................................. 4

*Gibbs v. Massey*,
   2009 U.S. Dist. LEXIS 23578 (D.N.J. Mar. 26, 2009) ................................. 14

*In re DoubleClick, Inc. Privacy Litig.*,
   154 F. Supp. 2d 497 (S.D.N.Y. 2001) ............................................................ 4

*Jevic v. Coca Cola Bottling Co.*,
   1990 U.S. Dist. Lexis 8821 (D.N.J. June 6, 1990) ....................................... 14

*Low v. LinkedIn Corp.*,
   900 F. Supp. 2d 1010 (N.D. Cal. 2012) ........................................................ 12

*Mu Sigma, Inc. v. Affine, Inc.*,
   2013 U.S. Dist. LEXIS 99538 (D.N.J. July 17, 2013) ................................... 8

*O'Donnell v. United States*,
   891 F.2d 1079 (3d Cir. 1989) ........................................................... 13, 14, 15

*P.C. Yonkers, Inc. v. Celebrations the Party & Seasonal Superstore, LLC*,
   428 F.3d 504 (3d Cir. 2005) ........................................................................... 5

*P.C. of Yonkers, Inc. v. Celebrations! the Party & Seasonal Superstore, L.L.C.*,
   2007 U.S. Dist. LEXIS 15216 (D.N.J. Mar. 2, 2007) ..................................... 4

*PNC Mortg. v. Superior Mortg. Corp.*,
   2012 U.S. Dist. LEXIS 25238 (D.N.J. Feb. 27, 2012) ................................... 5

*Remsburg v. Docusearch, Inc.*,
   816 A.2d 1001 (N.H. 2003) .......................................................................... 12

*Torsiello v. Strobeck*,
   955 F. Supp. 2d 300 (D.N.J. 2013) ............................................................... 10

*Vurimindi v. Fuqua School of Bus.*,
   435 F. App'x 129 (3d Cir. 2011) .................................................................. 12

*Yates v. Commercial Index Bureau, Inc.*,
    861 F. Supp. 2d 546 (E.D. Pa. 2012) ............................................................ 14

## STATUTES

California Penal Code § 502 ....................................................................................... 6

## PRELIMINARY STATEMENT

Google demonstrated in its motion to dismiss that Plaintiffs' Second Amended Complaint ("SAC") fails to cure the defects in their original complaint. Plaintiffs' opposition comes nowhere close to rebutting Google's showing. Indeed, most notable about the opposition is its failure to respond to the majority of the issues Google raised. Rather than address them on the merits, Plaintiffs simply ignore them, and resort to mischaracterizing the SAC and the Court's prior order. This ill-conceived attempt to distract the Court from the SAC's deficiencies only confirms that it should be dismissed with prejudice.

*New Jersey Computer Related Offense Act ("CROA").* Plaintiffs added a single paragraph (¶ 153) to the SAC in an effort to plead the "business or property" damage required by the CROA. But that paragraph, which according to Plaintiffs represents an effort to pursue a "new theory" of unjust enrichment, does not solve the problem. The Court already rejected Plaintiffs' effort to apply "unjust enrichment" to the current allegations because this is not a quasi-contract case, and also rejected their argument that a purported benefit to Google constitutes damage to their business or property under the CROA. Order 35, 38-39. The SAC adds nothing new, and the CROA claim should therefore be dismissed again for failure to allege damage to Plaintiffs' business or property. The claim also fails because Plaintiffs do not allege that Google violated any subsection of the CROA or that Google intended to harm Plaintiffs.

*Intrusion upon Seclusion.* Plaintiffs' intrusion claim fares no better. Plaintiffs argue that Google's use of cookies invades a legally private matter because

1

Google allegedly collects personally identifiable information when users register accounts for certain Google services unrelated to the conduct at issue (*e.g.*, Gmail, Google Plus), and then "connects" this information to the DoubleClick cookie. But Plaintiffs present no plausible facts showing Google made any such connection, and do not even allege that they are registered Google account holders—nor could they be, since Google prohibited minors under 13 years old from registering for Google accounts. The intrusion claim also fails because Google's routine use of cookies in online advertising does not meet the "highly offensive" requirement, and Plaintiffs do not allege that Google knew and intended that placing cookies on Plaintiffs' browsers was unlawful (which it was not).

Because Plaintiffs have not cured the defects in their claims, the SAC should be dismissed with prejudice.

## ARGUMENT

### I.   THE NEW JERSEY CROA CLAIM SHOULD BE DISMISSED

Plaintiffs' CROA claim fails because Plaintiffs did not allege that (1) they were damaged in business or property; (2) Google engaged in prohibited conduct; or (3) Google purposefully or knowingly harmed them.

#### A.   Plaintiffs Were Not Damaged in Business or Property

Plaintiffs concede the SAC contains only a single new paragraph (¶153) aimed at correcting their failure in the prior complaint to allege injury to their "business or property" as required under the CROA. *See* Opp. 15; Order 35. Plaintiffs contend that Paragraph 153 provides a "new theory" of "unjust enrichment" "not as an independent action in tort, but as a measure of damages under

the NJCROA in a quasi-contractual sense." Opp. 14-15. Their effort to rely on unjust enrichment to support their CROA claim fails for the same reasons their independent unjust enrichment claim failed in the original complaint (Count VII).

The Court already rejected Plaintiffs' attempt to apply a quasi-contract theory to this case, finding that "[t]his is not a quasi-contract case." Order 38. Plaintiffs have alleged no new facts to try to justify application of a quasi-contractual remedy in this case. While Plaintiffs suggest they entered a contractual or quasi-contractual relationship with Viacom through their use of its Nick.com website, those allegations have no bearing on Google. Opp. 16-17.

Nor have Plaintiffs sufficiently alleged unjust enrichment. As Plaintiffs acknowledge, to allege unjust enrichment a party must demonstrate "'that it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights.'" Opp. 16 (citing Order 38). But Plaintiffs do not allege any such facts. As the Court explained in dismissing the last complaint:

> Plaintiffs argue that the Defendants "received a direct benefit" from the information they collected from Plaintiffs. . . . But receipt of a benefit by a defendant and conferral of a benefit by a plaintiff are two different things, and it simply is not reasonable for a consumer – regardless of age – to use the internet without charge and expect compensation because a provider of online services has monetized that usage.

Order 38. The same reasoning applies to the SAC. Plaintiffs allege no new facts to show they could reasonably expect any remuneration from Google nor that they "conferred a benefit" on it.

Even if Plaintiffs could allege unjust enrichment, they cite no authority that

3

the claimed "unjust enrichment" to Google could possibly constitute damage to their business or property to satisfy the CROA.[1] The allegations of the SAC are identical to those they relied on for their CROA damages theory in the last complaint. Plaintiffs asserted they were damaged under the CROA by Google's "'acquisition and use of Plaintiffs' personal information for marketing purposes.'" The Court rejected that theory on the ground that a claimed benefit to Google could not be equated with any corresponding injury to Plaintiffs: "[J]ust because Defendants can monetize Plaintiffs' internet usage does not mean Plaintiffs can do so as well." Order 35; *see also id.* at 7 (noting the absence of "any court that has held the value of [demographic information collected by marketers] constitutes damage to consumers or unjust enrichment to collectors") (quoting *In re DoubleClick, Inc. Privacy Litig.*, 154 F. Supp. 2d 497, 525 (S.D.N.Y. 2001)). Plaintiffs do not and cannot explain how a mere benefit to Google corresponds to any damage to them in business or property as the CROA requires.

Plaintiffs' invocation of "unjust enrichment" thus changes nothing. They do not allege damage to business or property, and their CROA claim should be dismissed with prejudice.

---

[1] Cases that have found damage to "business or property" under the CROA involve actual economic detriment to plaintiffs, not merely a claimed benefit to defendants. *See, e.g.*, *P.C. of Yonkers, Inc. v. Celebrations! the Party & Seasonal Superstore, L.L.C.*, 2007 U.S. Dist. LEXIS 15216, at *27 (D.N.J. Mar. 2, 2007) (plaintiffs suffered "great financial detriment" because defendants allegedly used data stolen from plaintiffs to unfairly compete against them); *Fairway Dodge, Inc. v. Decker Dodge, Inc.*, 2006 N.J. Super. Unpub. LEXIS 1360, at *28 (App. Div. June 12, 2006) (defendants' conduct "impaired [plaintiff's] opportunity to sell vehicles, parts, and services and . . . such impairment resulted in lost revenue"), *aff'd*, 191 N.J. 460 (2007).

### B. Plaintiffs Do Not Meet the Remaining CROA Requirements

#### 1. Plaintiffs Do Not Allege Prohibited Conduct

Plaintiffs' CROA claim should also be dismissed because they do not allege that Google engaged in conduct prohibited under any CROA subsection.

***Subsections (a) and (b)***. Google explained in its opening brief that Plaintiffs fail to state a claim under CROA subsections (a) and (b) because they have not alleged Google engaged in the unauthorized "altering, damaging, taking, or destroying" of data or a computer.[2] Instead, the SAC alleges only that Google engaged in ordinary, voluntary, and authorized exchanges of data with Plaintiffs' browsers, in the way those browsers were designed to communicate. *See* Mot. 14. As Plaintiffs concede, "this is just how internet advertising works." Opp. 19.

Plaintiffs assert that Google argued that their CROA claim fails because Plaintiffs did not "identify *what* data was taken." *Id.* (emphasis added). But Plaintiffs miss the point. Google did not argue that the claim fails because of Plaintiffs' inability to identify specific data that was taken, but rather because they did not allege that Google improperly took *any data* from them. Any data Google received was *voluntarily sent to it* by Plaintiffs' browsers via GET requests, and other than the cookie values themselves (which Google already knew), that data

---

[2] Google cited *P.C. Yonkers, Inc. v. Celebrations the Party & Seasonal Superstore, LLC,* 428 F.3d 504, 509 (3d Cir. 2005), and *PNC Mortg. v. Superior Mortg. Corp.*, 2012 U.S. Dist. LEXIS 25238 (D.N.J. Feb. 27, 2012) for the proposition that merely gaining access to information does not violate the CROA. *See* Mot. 14-15. While Plaintiffs unsuccessfully try to distinguish *Yonkers* on an irrelevant procedural point, they do not dispute that both *Yonkers* and *PNC Mortgage* found that "access to the information alone was not enough to support a claim under the NJCROA." *See* Opp. 20.

would have been sent to Google *even in the absence of any cookies*. Mot. 4, 14. Plaintiffs admit this. *See id.* at 14; SAC ¶¶ 23-29, 37-45.[3] Even under the unsupported theory that Google received additional information directly from Viacom, Plaintiffs allege only that Viacom *shared* it with Google or *provided Google with access to it*. Mot. 6, 14; SAC ¶¶ 68, 70, 76, 106-07, 112. Plaintiffs do not even try to explain how this voluntary provision of information by Viacom or Plaintiffs' browsers to Google could possibly violate the CROA – and it could not.

  ***Subsection (c)***. Plaintiffs do not state a subsection (c) claim because they do not allege Google accessed a computer without authorization, which requires *hacking-like* conduct. Mot. 15; *see* Order 35 ("The CROA is an anti-computer-hacking statute."). The Third Circuit and other courts hold that CROA claims are similar to claims under the Computer Fraud and Abuse Act ("CFAA") and § 502 of the California Penal Code ("CCL"), which were enacted to combat hacking and viruses, not ordinary commercial activity. *See* Mot. 10 & n.5. Consistent with this legislative intent, courts routinely reject CCL and CFAA claims that challenge everyday conduct like that alleged here. *See id.* at 11. As before, Plaintiffs argue these cases are "unnecessary" to interpret the CROA (Opp. 20 n.12), but they neither distinguish them, nor point to material differences among the statutes. The Court should reject Plaintiffs' attempt to extend the CROA and criminalize

---

[3] Plaintiffs' contention that children lack the capacity to consent "to any agreement to place cookies on their computers" misses the point because, as the Court observed previously, "this is not a contract case." Order 28. Moreover, because Plaintiffs' browsers voluntarily sent the same information to Google *whether or not cookies are present*, Plaintiffs' capacity to consent to placement of cookies on their browsers has no bearing on their CROA claim. *See* Opp. 21.

ordinary conduct that the law does not (and was never intended to) reach.

***Subsection (e)***. Plaintiffs' subsection (e) claim fails because they do not allege that Google hacked their computers, nor that it acted recklessly. Mot. 16. Plaintiffs do not even attempt to allege their computers were hacked. Instead they merely argue Google was reckless because it "knew" and "ignor[ed]" that Plaintiffs "were minor children who lack the capacity to consent to any agreement to place cookies on their computers." Opp. 21. But Plaintiffs do not allege Google was even aware of Plaintiffs' ages.[4] In fact, the SAC demonstrates that Google engaged in routine Internet communications and not in any way that can be deemed reckless. SAC ¶¶ 32-33, 35-37, 45. And as noted *supra* at pp. 5-6, Plaintiffs' browsers sent Google the same data whether or not a cookie was present.

### 2. Google Did Not Purposefully or Knowingly Harm Plaintiffs

For each subsection of the CROA, Plaintiffs must plead facts demonstrating that Google purposefully or knowingly *harmed* them in business or property. Mot. 16 (citing cases). Their failure to do so provides an independent ground for the Court to dismiss the CROA claim.

Plaintiffs argue they need only allege that Google's conduct was purposeful

---

[4] The SAC alleges only that Viacom may have embedded its own internal "rugrats" codes, representing the age and gender of users, in URLs for Viacom webpages, and that these codes (not what they represent) were included in GET requests that users' browsers send to Google. SAC ¶¶ 111-114. Plaintiffs do not allege Google knew about the internal Viacom codes, much less that Google understood them. Nor do Plaintiffs allege any facts to show that Google's receipt of "rugrats" codes had anything to do with the DoubleClick cookie, rather than the routine back and forth between browsers and servers that occurs wholly independent of the presence or absence of cookies. *See id.* ¶¶ 23-29, 37-43, 73.

or knowing, claiming that the CFAA cases requiring an intent to harm are inapplicable. Opp. 21. But they provide no basis for interpreting the CROA differently than its federal anti-hacking counterpart. *See Mu Sigma, Inc. v. Affine, Inc.,* 2013 U.S. Dist. LEXIS 99538, at *30 (D.N.J. July 17, 2013) (noting similarity between CROA and CFAA claims); *supra* at p. 6. Plaintiffs' allegations that Google "designed" or "intentionally and purposefully programmed" cookies (Opp. 18, 19) do not satisfy the intent requirement because Plaintiffs do not allege Google intended to or knew its conduct would harm them (which it did not).[5] To the contrary, the SAC confirms that Google's sole purpose in placing cookies was to deliver more relevant ads. SAC ¶¶ 35-37, 45. Plaintiffs' CROA claim should be dismissed with prejudice.

## II. THE INTRUSION CLAIM SHOULD BE DISMISSED

Plaintiffs' intrusion upon seclusion claim should be dismissed with prejudice because (1) Google did not invade a legally private matter, (2) the alleged intrusion was not highly offensive, and (3) Google lacked the requisite intent.

---

[5] Plaintiffs' try to analogize Google's use of cookies to a bank selling mortgage-backed securities prior to the financial crisis and then "bet[ting] against those securities . . . to make the customers bear the brunt of any loss." Opp. 19 n.10. The comparison is absurd. Google uses the DoubleClick cookie to display more relevant ads, to the benefit of users and advertisers alike. *See* SAC ¶¶ 33, 35-37, 45; Order 3-4, 27-28. Google does not "bet" against users or cause them harm, as evidenced by Plaintiffs' failure to allege any harm here. Likewise inapposite is Plaintiffs' effort to analogize Defendants' conduct to an app that installs on users' phones "without [users'] knowledge or consent" when the users walk into a store and then "mines [their] name, date of birth and gender." Opp. 19 n.11. In contrast, Plaintiffs' allege here that (i) they voluntarily provided information to Viacom when they registered with Viacom's website, and (ii) their browsers voluntarily exchanged *other* information with Google, *whether or not cookies were present on their browsers*, in the ordinary operation of the Internet.

8

### A. Google Did Not Invade a Legally Private Matter

Plaintiffs' intrusion claim fails because they do not allege facts showing that Google invaded a legally private matter.[6] While "'information that is identifiable to an individual'" may be private (Order 36; Mot. 23), Plaintiffs do not allege that Google acquired any such information. Plaintiffs' intrusion claim is premised on their assertion that Google collects personally identifiable information *when users register accounts for certain Google services not at issue here* (*e.g.,* Gmail, Google Plus), and "connects" this information to cookies. *See* Mot. 24. But as Google explained, these allegations do not help Plaintiffs because they do not allege they are registered Google account holders. *Id.* at 9, 24. Because Plaintiffs are under 13 years old, Google prohibited them from registering for an account. *Id.* at 9 n.2. They concede this critical point by failing to address it.[7]

Any information Google received from Plaintiffs was not an invasion of a legally private matter for the additional reason that Plaintiffs voluntarily provided it by sending GET requests to Google. *Id.* at 24-25. Plaintiffs' only response is to assert that Google *used* this data in an unauthorized manner. *See* Opp. 24. But they do not plead any facts showing that Google engaged in such unauthorized

---

[6] Plaintiffs mischaracterize the Court's Order, claiming that "the Court found that Plaintiffs' Complaint plausibly 'alleges facts demonstrating that . . . Defendants intruded upon [Plaintiffs'] private concerns.'" Opp. 22. In fact, the Court expressly did *not* reach the issue. *See* Order 37 ("But the Court need not address that question at this juncture . . . .").

[7] Plaintiffs' allegations are implausible for the additional reason that they are inconsistent with Google's privacy policy, a point they also do not dispute. *See* SAC ¶ 85 ("We will not combine DoubleClick cookie information with personally identifiable information unless we have your opt-in consent"); Mot. 24.

use. And even if they had alleged such a use, it would be irrelevant. As Plaintiffs concede, an alleged "intruder's subsequent *use* of the information obtained . . . does not bear on whether an unlawful intrusion occurred." *Id.* (emphasis added).

### B. The Alleged Intrusion Was Not Highly Offensive

Plaintiffs' claim should also be dismissed because Google's routine use of cookies was not highly offensive to a reasonable person. Mot. 18-23.

***The Court Can Evaluate the Sufficiency of Plaintiffs' Allegations.*** Plaintiffs argue that determining whether an alleged intrusion is highly offensive is a question of fact for a jury to decide. Opp. 25-27. Plaintiffs' cases do not support their argument. The court *granted* the motion to dismiss in *Torsiello v. Strobeck*, 955 F. Supp. 2d 300, 315 (D.N.J. 2013), and Plaintiffs' remaining cases do not remotely suggest that the question of whether conduct is highly offensive *must* necessarily go to a jury, only that there are circumstances (not present here) when it *might*. Plaintiffs also do not distinguish the many cases Google cited in which courts dismissed analogous intrusion claims for failing to allege highly offensive conduct. Mot. 18-19. Nor do they acknowledge that *this Court* dismissed their intrusion claim as failing to allege highly offensive conduct. Order 37.

***Google's Use of Cookies Was Not Highly Offensive.*** Plaintiffs' arguments as to why their allegations are sufficient to show highly offensive conduct are similarly flawed. Plaintiffs contend that the Court should look to social norms to determine whether particular conduct is highly offensive. Opp. 27-29.[8] But none

---

[8] The cases Plaintiffs cite involve allegations of egregious misconduct far afield from the routine commercial activity alleged in Plaintiffs' SAC. *See, e.g.*,

10

of the new allegations they added to the SAC supports their contention that Google's use of cookies falls outside social norms, much less that it is highly offensive. And, indeed, Plaintiffs concede the point by their failure to respond to nearly all of Google's cases and arguments:

*Viacom Did Not Disclose Plaintiffs' Ages to Google.* Plaintiffs repeatedly argue that Viacom disclosed their ages to Google, and that Google should therefore have accorded them unidentified special privacy protections because it knew they are children. *See, e.g.,* Opp. 29-31. But as noted, the SAC contains no facts to support that argument. *See supra* at 7 n.4.

*Federal and State Law.* Plaintiffs contend that Google's use of cookies was highly offensive because it supposedly violates the VPPA, Wiretap Act, Pen Register Act, CFAA, and state computer crime laws. But as Google explained, Plaintiffs either do not attempt to plead that Google violated these statutes (Pen Register Act, CFAA, undefined "state computer crime statutes"), or to the extent they tried, the Court has already dismissed the claims with prejudice (VPPA, Wiretap Act). Mot. 19. Nor do Plaintiffs address the numerous cases Google cited

---

*Clayton v. Richards*, 47 S.W.3d 149, 153 (Tex. App. Tex. 2001) (alleging defendant placed a video camera in plaintiff's bedroom and secretly videotaped him without his consent); *Vurimindi v. Fuqua School of Bus.*, 435 F. App'x 129, 136 (3d Cir. 2011) (alleging campus police improperly searched plaintiff's room and "monitored his computer activity with key logger software in order to obtain his bank information and . . . disclose it to the student body"); *Dalley v. Dykema Gossett, P.L.L.C.*, 788 N.W.2d 679, 690 (Mich. Ct. App. 2010) (alleging "defendants obtained consent to enter [plaintiff's] apartment through a combination of subterfuge and threat"); *Remsburg v. Docusearch, Inc.*, 816 A.2d 1001, 1009 (N.H. 2003) (alleging defendant obtained plaintiff's social security number without plaintiff's knowledge or permission and sold it to a third party).

11

demonstrating that, while laws may reflect social norms, not every violation of the law is considered highly offensive for purposes of an intrusion claim. Mot. 19-20. Only an "*egregious* breach of . . . social norms" is highly offensive. *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012). For example, driving five miles-per-hour over the speed limit may violate the law, but it is not an *egregious* breach of social norms. Thus, even if Plaintiffs had alleged facts that Google violated a law (which they did not), Plaintiffs would still have to show that the violation was sufficiently egregious to be considered highly offensive—something Plaintiffs do not attempt. Plaintiffs' own cases stand for the unremarkable proposition that violations of criminal and civil laws *can* be highly offensive (Opp. 28-29), but none suggests (i) that *all* alleged violations of civil and criminal laws satisfy this high bar, or (ii) that the routine (and lawful) commercial conduct at issue here comes anywhere close to satisfying it. *See also supra* at p. 10 n.8.

*End-user Agreements*. Plaintiffs assert that because Google violated the terms of certain Internet Service Provider and web browser contracts, its conduct must be highly offensive. But as Google explained in its motion, such agreements are inapposite because they govern the conduct of *consumers*, not service providers like Google. Plaintiffs' only response is the puzzling assertion that "Google is not actually an ISP." *See* Opp. 31 n.18. But Google never claimed here it was an ISP. It said merely that the end-user agreements Plaintiffs identify do not provide a yardstick against which the conduct of an online advertising service could be judged highly offensive, a point to which Plaintiffs do not respond.

*Surveys*. Plaintiffs quote the results of various surveys. Opp. 32-33. Google

12

previously demonstrated that these surveys (1) ask about completely irrelevant conduct, (2) do not purport to measure whether conduct is highly offensive, and (3) fail to consider the benefits of cookies. Mot. 22-23. Plaintiffs do not dispute these points, but instead merely recite the irrelevant survey results and speculate that "reasonable people may disagree" about whether cookie use is "'socially useful.'" Opp. 33. But speculation is not enough to show that cookie use is an *egregious breach of social norms*. In sum, Plaintiffs have not alleged that Google's alleged conduct is highly offensive, and the intrusion claim should be dismissed.[9]

### C. Google Lacked the Requisite Intent

Plaintiffs' intrusion claim should also be dismissed because they do not allege that Google "believe[d], or [wa]s substantially certain, that [it] lack[ed] the necessary legal or personal permission to commit the [alleged] intrusive act." *O'Donnell v. United States*, 891 F.2d 1079, 1083 (3d Cir. 1989); Mot. 17-18. Plaintiffs' arguments that they sufficiently alleged intent all lack merit:

*First*, Plaintiffs argue that they need not allege an intent to intrude, and that the Court should simply ignore the quoted language from *O'Donnell* requiring such an intent. According to Plaintiffs, the statement in *O'Donnell* was mere "dicta" because "there was no dispute of material fact that the defendant[] had permission to commit the intrusive acts."[10] Opp. 23.

---

[9] Plaintiffs also fail to respond to Google's explanation of why their allegations concerning a Wikihow website and online advertising industry standards do not show that its use of cookies was highly offensive. *See* Mot. 20-21.

[10] Plaintiffs do not dispute that New Jersey and Pennsylvania law are identical on this issue. *See* Mot. 17 n.9; Opp. 26 n.15.

13

Plaintiffs' argument mischaracterizes *O'Donnell*. The plaintiff in *O'Donnell* alleged that the Veterans Administration ("VA") was liable for intrusion because it allegedly disclosed certain medical records to the plaintiff's employer without his authorization. *See O'Donnell,* 891 F.2d at 1081. The court held it was immaterial whether the intrusion was *actually* authorized because it was undisputed that the "VA *believed* it had [plaintiff's] permission to release the disputed record." *Id.* at 1083 (emphasis added).[11] The court granted summary judgment for the VA, since it lacked the requisite intent to intrude. The opinion thus *holds* that, contrary to Plaintiffs' contention, intent to intrude is required.

*Second*, Plaintiffs cite *Yates v. Commercial Index Bureau, Inc.*, 861 F. Supp. 2d 546, 551 (E.D. Pa. 2012) to suggest that plaintiffs are not "require[d] to have knowledge of the reasons for the intrusion." Opp. 23. But as Google explained (4/2/14 Reply at 24), and Plaintiffs do not dispute, *Yates* held only that a plaintiff is not required to show that she knew *at the time of the intrusion* the defendant's reasons for the intrusion. 861 F. Supp. 2d at 551. *Yates* does not excuse Plaintiffs' failure to plead facts that Google acted with illegal intent.

*Third*, Plaintiffs claim "the issue of Defendants' knowledge of the legality of its own conduct would require extensive fact-finding, making dismissal at this stage premature." Opp. 23. Plaintiffs are mistaken. Intent can be inferred from

---

[11] In *Jevic v. Coca Cola Bottling Co.,* it was undisputed that the defendant believed it had permission to commit the alleged intrusion because the plaintiff "expressly authorized" it. Thus, the court granted summary judgment to the defendant. 1990 U.S. Dist. Lexis 8821, at *25 n.5 (D.N.J. June 6, 1990). *Gibbs v. Massey*, 2009 U.S. Dist. LEXIS 23578 (D.N.J. Mar. 26, 2009) does not help Plaintiffs because the Court did not address the intent required to plead an intrusion claim.

readily available, objective evidence such as a defendant acting covertly to avoid detection or continuing to engage in allegedly offensive conduct after being told to stop. *See O'Donnell,* 891 F.2d at 1083 n.3 (citing numerous examples of objective evidence reflecting intent to intrude). Plaintiffs do not allege such facts here.

*Finally*, Plaintiffs cite allegations that they claim demonstrate the requisite intent. Opp. 25. But all of these allegations (1) lack factual support and should be disregarded as mere conclusions,[12] (2) repeat allegations from the original complaint which the Court found did not evidence an illegal purpose (*see* Order 27),[13] and/or (3) concern solely Viacom's conduct.[14] They come nowhere close to supporting an allegation that Google harbored the required intent to intrude.

## CONCLUSION

For the foregoing reasons, Google respectfully requests that the SAC be dismissed with prejudice.

Dated: December 5, 2014

Colleen Bal (admitted *pro hac vice*)
Michael H. Rubin (admitted *pro hac vice*)
WILSON SONSINI GOODRICH
   & ROSATI, P.C.
One Market Plaza
Spear Tower, Suite 3300
San Francisco, CA 94105-1126
Telephone: (415) 947-2000
cbal@wsgr.com
mrubin@wsgr.com

Respectfully submitted,

SILLS CUMMIS & GROSS P.C.
One Riverfront Plaza
Newark, New Jersey 07102-5400
Telephone: (973) 643-7000

By: */s/ Jeffrey J. Greenbaum*
Jeffrey J. Greenbaum
jgreenbaum@sillscummis.com

*Attorneys for Defendant Google Inc.*

---

[12] SAC ¶¶ 95-96, 109-114, 143, 145-147, 152, 158.
[13] SAC ¶¶ 109-114, 145.
[14] SAC ¶¶ 109-110, 143, 145, 147.

15